UNITED STATES of America, Appellee,

v.

**Larry POWELL, Appellant.**

**No. 77–1453.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1977.

Decided Nov. 1, 1977.

Norman Denenberg, argued, and Edward A. Mullery, Omaha, Neb., on briefs, for appellant.

Thomas D. Thalken, Asst. U. S. Atty., Omaha, Neb., argued, Daniel E. Wherry, U. S. Atty., Omaha, Neb., on brief, for appellee.

Before VAN OOSTERHOUT and MATTHES, Senior Circuit Judges, and STEPHENSON, Circuit Judge.

STEPHENSON, Circuit Judge.

Appellant Powell appeals from his jury conviction on a one count indictment charging conspiracy to distribute heroin in violation of 21 U.S.C. § 846.[1] Appellant contends the trial court erred in (1) overruling appellant's motion for judgment of acquittal because the evidence was insufficient to establish a conspiracy; (2) refusing to give requested instructions regarding the conspiracy charge; (3) permitting the government to amend certain dates in the indictment during the course of the trial; and (4) refusing to suppress a tape recording of a conversation appellant had in advance of trial. We affirm.

The evidence discloses that appellant Powell and Ike Conway made three trips from Omaha, Nebraska, to Los Angeles, California, for the purpose of securing heroin. In the spring of 1976, appellant Powell approached Ike Conway, a heroin dealer in Omaha, Nebraska, concerning the acquisition of heroin from Conway's source of supply. Conway advised appellant that he could get heroin in California for $1000 an ounce. Shortly thereafter appellant and Conway made their first trip from Omaha

---

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, imposed a sentence of seven years imprisonment with a special three year parole term to follow. 21 U.S.C. § 841(b)(1)(A).

to Los Angeles via commercial airlines. Upon arrival Conway called his source of supply, Herman Clarence Douglas, and had Douglas meet them at their motel parking lot. Appellant produced $10,000 which was given to Douglas. The heroin was delivered to appellant who indicated to Conway that he was satisfied with the dope. Appellant and Conway returned to Omaha separately. The heroin obtained by appellant was thereafter sold by him in Omaha.

Approximately 30 days later appellant and Conway made their second trip to Los Angeles for the purpose of securing heroin. This time Conway rented a car at the Omaha airport and drove appellant to Des Moines, Iowa, where they took a commercial airlines flight to Los Angeles. Conway's explanation for the circuitous route was: "Well, we didn't want nobody to see us, we were both suspicious, messing with heroin, and we didn't want nobody to see us to go." Prior to leaving Des Moines appellant gave Conway part of the $20,000 he had brought for the purpose of purchasing heroin. Upon their arrival in Los Angeles Conway again telephonically contacted his source of supply, Douglas. They met Douglas in the motel coffee shop and left in Douglas' car. While in the car appellant gave Conway the $20,000 and the address where he wanted the heroin delivered. Conway gave the money and address to Douglas. Appellant and Conway then returned to their motel where Conway received a telephone call from Douglas that "my package was on the way." A few minutes later appellant received a call and then advised Conway "I am going over and check it out and see it is okay." Appellant returned about 15 minutes later and advised Conway "that everything was okay." Appellant and Conway then returned separately to Omaha. Appellant brought the heroin back to Omaha and sold it.

In July appellant and Conway made the third trip to Los Angeles with $20,000 for the purpose of securing heroin. This time a friend of Conway's drove appellant and Conway to Lincoln, Nebraska. From Lincoln they flew to Los Angeles. Upon arrival at their motel Conway again contacted

Douglas who came over to the motel. This time appellant and Douglas could not agree on a price. The $20,000 in cash was then deposited in a safety deposit box at a local bank. The deposit was actually made by Conway's sister on July 19, 1976. Appellant, however, filled out the application form for the deposit box which she signed. Thereafter, as before, appellant and Conway returned separately to Omaha. About a week later Conway talked to appellant in Omaha. Appellant said "he had got a better deal, * * * he bought a brick of dope for $36,000.00." Conway asked appellant for some of the heroin, but appellant said "he would have to talk to his peoples" first. Conway never did receive any of the heroin from appellant and that ended their venture.

Appellant contends the evidence is insufficient to prove that appellant conspired to distribute heroin. The thrust of his argument is that evidence of two purchases of heroin from Douglas did not suffice to create a conspiracy between the buyer and seller. The difficulty with appellant's contention is that viewing the evidence most favorable to the government the record establishes much more than a simple buyer-seller transaction.

■ The gist of the offense of conspiracy is a combination or agreement to disobey, or to disregard, the law. It is a "collective criminal agreement—[a] partnership in crime." *Callanan v. United States*, 364 U.S. 587, 593, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961). A conspiracy is rarely susceptible of proof by direct evidence but must be proved by circumstantial evidence. *Valentine v. United States*, 293 F.2d 708, 710 (8th Cir. 1961), *cert. denied*, 369 U.S. 830, 82 S.Ct. 848, 7 L.Ed.2d 795 (1962).

■ Proof of an explicit agreement to distribute the drugs is not required. The nature of the sales in itself may be sufficient evidence to support a finding of conspiracy. In *Direct Sales Co. v. United States*, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943), the Supreme Court held that the nature of the goods sold, morphine sul-

phate, a restricted commodity with inherent capacity for harm, plus the quantity and frequency of sales was sufficient from which to infer that the seller knew of and participated in promoting the buyer's intended illegal distribution thereof. *Compare United States v. Falcone,* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940).

■ In this case the first trip resulted in the purchase of 10 ounces of heroin valued at $10,000; the second resulted in the purchase of 20 ounces of heroin valued at $20,000; the third trip was initially unsuccessful but a purchase of $20,000 worth of heroin was contemplated. This court has approved the use of the amount and value of controlled substances as proper circumstantial evidence to infer an intent to distribute as distinguished from mere possession for personal use. *United States v. Blake,* 484 F.2d 50, 58 (8th Cir. 1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Wilkerson,* 478 F.2d 813 (8th Cir. 1973); *United States v. Echols,* 477 F.2d 37 (8th Cir.), *cert. denied,* 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973). In addition to the volume of heroin purchased there is other direct evidence that appellant conspired with either or both Ike Conway and Douglas in procuring the heroin for distribution in Omaha, all as previously described in the facts surrounding the three trips to Los Angeles and returns to Omaha.[2]

■ Appellant further contends the court erred in permitting the government to amend the indictment to state the ending date of the conspiracy as the end of July 1976 in lieu of June 15, 1976, as initially set out in the indictment. We disagree. The issue arose when the government offered in evidence three exhibits which showed that the safety deposit box in which the $20,000 was deposited on the third trip to Los Angeles was opened and entered on July 19 and 26, 1976. The government advised the trial court that the materials provided to

the appellant well in advance of trial referred to this incident many times. Appellant did not then claim surprise or prejudice. Neither does he now. We note in this connection that the indictment which was filed December 16, 1976, describes the incident complained of except for the proper date.

We have consistently held that a variance between the date in the indictment and the proof is not fatal if the proof shows that the acts charged were committed within the statute of limitations and prior to the return date of the indictment, as long as the date was not a material element of the crime charged and defendant is unable to point to any prejudice. *United States v. Reece,* 547 F.2d 432, 434–35 (8th Cir. 1977); *United States v. Frazier,* 545 F.2d 71, 73–74 (8th Cir. 1976), *cert. denied,* 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977); *United States v. Joyner,* 539 F.2d 1162, 1164–65 (8th Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593 (1976). We have applied the same principles when the trial court permitted the government to amend a clerical error as to the date of the crime. *Krana v. United States,* 546 F.2d 785, 786 (8th Cir. 1976). This is consistent with Fed. R.Crim.P. 52(a) which states "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *See Russell v. United States,* 369 U.S. 749, 762–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). We conclude that the trial court did not err in permitting the government to amend the termination date of the conspiracy set out in the indictment.

■ Appellant's final claim of error arises out of the trial court's pretrial denial of a motion to suppress a government arranged tape recording of a conversation between Conway and appellant. The taped conversation took place after Conway's testimony before the grand jury. Appellant's indictment was filed a week thereafter. The prosecutor in his opening statement

---

2. In connection with his evidentiary insufficiency contention appellant complains that the court failed to give two requested instructions and erred in giving another upon which no

proof was offered. We are satisfied that the instructions when considered as a whole were adequate and submissible on the basis of the proof offered and received.

referred to the recorded conversation between Conway and appellant and said that the jurors would be able to listen to the tape, confirming Conway's testimony. When the tape recording was offered in evidence during the course of the trial the court changed its ruling and refused its admission. Upon the request of appellant the court promptly admonished the jury to disregard any prior mention of any tape recording or any statements of counsel with reference to it.

We are satisfied that any prejudice arising from counsel's limited mention of the tape recording in his opening statement was removed by the court's prompt admonition to the jury when the government's offer was made. We note further that no motion for mistrial was made.

Upon consideration of the entire record we are satisfied that appellant received a fair trial and his conviction should be affirmed.

Affirmed.