**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John CINA, Defendant-Appellant.**

**No. 82–1605.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 10, 1982.

Decided Jan. 24, 1983.

Rehearing Denied May 11, 1983.

Franklyn M. Gimbel, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for defendant-appellant.

James Wm. Morrison, Nathan A. Fishbach, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and BARTELS,* Senior District Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellant John Cina appeals from his conviction in a jury trial of one count of conspiracy to willfully reset and alter the odometer on a motor vehicle in violation of 18 U.S.C. § 371 and 15 U.S.C. §§ 1984 and 1990c; one count of mail fraud, in violation of 18 U.S.C. §§ 1341 and 1342; and two counts of willfully resetting and altering the odometer on a motor vehicle in violation of 15 U.S.C. §§ 1984 and 1990(C)(8)(b) and 18 U.S.C. § 2. This appeal raises three issues: whether the trial court erred in permitting an amendment of the indictment on the conspiracy count to allege the commencement of the conspiracy two years earlier than indicated in the initial indictment; whether the trial court erred in denying defendant's motion to dismiss count four for its failure to allege an offense under 18 U.S.C. §§ 1341 and 1342; and whether the trial court erred in refusing to submit to the jury certain instructions proffered by the defendant. Because we conclude that the trial court erred in refusing to dismiss count four but that the court acted properly in allowing the amendment of the conspiracy count and in refusing to tender to the jury certain of the defendant's proposed instructions, we reverse defendant's conviction under the mail fraud count but affirm his conviction under the conspiracy and tampering accounts.

I.

The defendant, a used car dealer, was charged initially in an eleven count indictment. Count one alleged that he had conspired to willfully reset and alter the odometer on five separate motor vehicles between May, 1977 and October, 1979. Pursuant to this conspiracy, the government alleged, the defendant employed a mechanic who specialized in "rolling back" odometers to signify a lower mileage, and instructed the mechanic to do so in relation to specific vehicles, thus enabling the defendant to resell those vehicles at enhanced prices. However, count one also alleged that certain overt acts in connection with two of the vehicles occurred in 1976 and early 1977, before the conspiracy was alleged to have commenced.[1] When this inconsistency was noted by the defendant in his motion to strike before trial, the government moved to amend the indictment to antedate by two years the alleged starting time of the conspiracy, to May, 1975, claiming that the inconsistency on the face of the indictment appeared only as a result of a "typographical error." The court denied the defendant's motion to dismiss, noting that it had been made only a week prior to trial, and granted the government's motion to amend count one. The defendant was convicted of this count.

Counts two through five of the indictment alleged that, in connection with four of the five vehicles mentioned in count one, the defendant had used the mails to send to the Wisconsin Department of Transportation, Division of Motor Vehicles, registration papers bearing the fraudulent odometer readings of each vehicle. The indictment charged that each of these mail frauds took place between September, 1977 and July 28, 1978. However, in the case of count four, upon which defendant was con-

---

* The Honorable John R. Bartels, Senior District Judge of the Eastern District of New York, is sitting by designation.

1. All overt acts in relation to one of the vehicles were stricken from count one, on defendant's motion, on the basis that the mechanic confederate had no contact with that vehicle. This, however, left standing in count one certain alleged overt acts, in connection with the other vehicle, which occurred outside of the original temporal scope of the alleged conspiracy.

victed, the actual mailing was alleged to have taken place on August 22, 1978, nearly a month *after* the *termination* of the alleged statutory violation. In count two, upon which defendant was acquitted, the actual mailing was alleged to have taken place on August 1, 1977, a month *before* the *commencement* of the alleged statutory violation. When these inconsistencies were brought to the attention of the court in defendant's motion to dismiss counts two and four for failure to allege an offense under the mail fraud statute, the government expressly moved to amend count two to allege the commencement of the mail fraud in 1975; the government, however, made no such express attempt to amend count four to allege that the mail fraud in that count extended to encompass the August 22, 1978 mailing.[2] The trial court denied the defendant's motion to dismiss counts two and four. The trial court, however, never explicitly addressed the government's motion to amend count two, nor did it indicate that it believed it had before it any motion to amend count four. The defendant was convicted of the incident. of mail fraud alleged in count four and acquitted of the incidents of mail fraud alleged in counts two, three and five.

Counts six through eleven alleged that the defendant had altered or reset or caused to be altered or reset the odometers of four of the five vehicles named in count one, and one additional vehicle. The defendant was convicted of counts six and eleven, and acquitted on counts seven, eight, nine and ten.

At the close of trial, the defendant submitted proposed jury instructions outlining certain defense theories to the trial court. The court, before offering these instructions to the jury, excised four sentences which stated the jury's obligation to acquit on various charges if it found certain facts, *e.g.,* that the odometer tamperings were concealed from the defendant, that the defendant did not participate in the odometer

tamperings, or that the defendant employed the mails for purposes of complying with state law rather than completing a scheme to defraud.

After the jury found defendant guilty under counts one, four, six and eleven, the defendant moved under Fed.R.Crim.P. 29(c) for acquittal on the bases, *inter alia,* that the court's amendment of count one was in error, that count four failed to allege an offense under the mail fraud statute, and that the trial court's excision of certain portions of the defendant's proposed jury instructions deprived him of his right to have his defense theory heard. Defendant's motion was denied. Defendant then appealed to this court, requesting a reversal of his conviction for the same reasons set forth in his post-trial motion.

## II.

### A. *The Amendment of Count One*

■ The defendant first argued that the trial court's amendment of count one to antedate the commencement of the conspiracy by two years violated the Fifth Amendment which provides, *inter alia,* "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury...." The government, by contrast, seeks to characterize the present situation as a mere "variance" between allegation and proof which is permissible in the absence of "substantial prejudice" to the defendant. The trial court itself apparently rejected the government's categorization, ruling that the change was "more than in the nature of a variance ... it is a substantive amendment of the indictment." The trial court, however, embraced the government's basic rationale, holding the amendment permissible in view of the defendant's failure to demonstrate "any prejudice" resulting from the amendment, and citing the

---

2. A perusal of the record suggests that, although defendant attempted to point out the temporal incongruities of both count two and four, the government did not take note of the disparity in count four. As late as post-trial

proceedings, the government declined to respond to the defendant's argument on this point, stating that it appeared to raise no cognizable problem.

liberal amendment policy embodied in *United States v. Reece,* 547 F.2d 432 (8th Cir. 1977), and *United States v. Powell,* 564 F.2d 256 (8th Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 495 (1978). Although the trial court's expression of its rationale was somewhat imprecise, we believe that it applied the correct test and properly found no prejudice sufficient to bar the amendment in the particular circumstances.

We note at the outset that, while the existing jurisprudence delineating the boundaries of permissible amendments and variances is far from fully systematized, there has been a distinct merging of the standards governing both. In general, either an amendment or a variance will be allowed to stand if it does not change an "essential" or "material" element of the charge so as to cause prejudice to the defendant. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *United States v. Nicosia,* 638 F.2d 970, 976 (7th Cir.1980); *United States v. Joyner,* 539 F.2d 1162, 1164 (8th Cir.1976), *cert. denied,* 424 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593 (1976); *United States v. Goldstein,* 502 F.2d 526, 528 (3d Cir.1976); Wharton's Criminal Procedure, § 503 (12th ed. 1975).

It was not always the case that amendments were amenable to "materiality" and "prejudice" analysis. The seminal case, *Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1886), relied on a strict construction of the Fifth Amendment and appeared to forbid any express or tacit variation from the initial indictment, holding that the accused "party can only be tried upon the indictment as found by such grand jury, and especially upon all its language found in the charging part." *Ex Parte Bain,* 121 U.S. 1, 9–10, 7 S.Ct. 781, 785–86, 30 L.Ed. 849. Later, the Supreme Court in *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935), carved out an exception for a literal "variance" between the proof offered at trial and the unamended charging terms of the indictment. Where the variance is not "material" and

does not "affect the substantial rights" of the accused, the Court held, there is no violation of the Fifth Amendment. *Berger,* 295 U.S. at 81, 82, 55 S.Ct. at 630. The Court indicated that "material" or "substantial" variances were those which trammeled the defendant's rightful expectations (1) that he be "definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." *Id.* at 82, 55 S.Ct. at 630.

The boundaries of the *Berger* "variance" exception were somewhat more narrowly defined in the Supreme Court's later decision in *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960), which articulated the "constructive amendment" and "essential elements" doctrines. Under these doctrines, even where the "trial court did not permit a formal amendment of the indictment, [but] the effect of what it did was the same," the variance would not be permitted. *Id.* at 217, 80 S.Ct. at 273. And a constructive amendment will be held to have occurred where the variance involved an "essential element" of the crime; in *Stirone,* the "essential element" was the allegation of an effect on interstate commerce which provided the court with jurisdiction. *Id.* at 218, 80 S.Ct. at 274.

Soon thereafter, the Supreme Court appeared to moderate the strictness of *Ex Parte Bain* and moved towards allowing a "materiality" and "prejudice" analysis to govern actual amendments as well as variances. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), stated in *dictum* that "an indictment may not be *amended* except by resubmission to the grand jury, unless the change is *merely a matter of form.*" *Id.* at 770, 82 S.Ct. at 1050 (emphasis added). *Russell* appeared to consider the permissibility of amendments and variances as one problem, whose solution was guided by the test of whether the changes "amount to no more than a technical deficiency of no prejudice to the defend-

ant." *Russell,* 369 U.S. at 763, 82 S.Ct. at 1046.

Subsequent cases in the various circuits, including our own, have continued to apply the Supreme Court's *Berger, Stirone,* and *Russell* standards to both amendments and variances with equal force; all changes, express or tacit, are scrutinized according to whether they affect a "substantial" or "material" element of the offense sufficiently to cause prejudice to the defendant. *See United States v. Nicosia,* 638 F.2d 970, 976 (7th Cir.1980); *Jervis v. Hall,* 622 F.2d 19, 21–23 (1st Cir.1980); *United States v. Powell,* 564 F.2d 256, 259 (8th Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 495 (1978); *Krana v. United States,* 546 F.2d 785, 786 (8th Cir.1976); *United States v. Goldstein,* 502 F.2d 526, 528 (3d Cir.1976). *See also* Wharton's Criminal Procedure, § 503 (12th ed. 1975) ("unless the inconsistency is material and prejudicial, the variance will be disregarded or the trial judge will allow the indictment or information to be amended to conform to the proof.").

The defendant has cited language in *Gaither v. United States,* 134 U.S.App.D.C. 154, 165, 413 F.2d 1061, 1072 (1969), and *United States v. DeCavalcante,* 440 F.2d 1264, 1271 (3d Cir.1971), suggesting that an actual "amendment" of an indictment is prejudicial *per se,* and that only a "variance" between written allegations and proof is amenable to a "materiality" and "prejudice" analysis. But the term "amendment" as used in those cases invokes a conceptual category rather than a literal description: an "amendment" occurs when the basic "charging terms" of the indictment are altered either literally or in effect. *Gaither,* 134 U.S.App.D.C. at 165, 413 F.2d at 1072; *DeCavalcante,* 440 F.2d at 1271. In other words, the distinction between amendment and variances as articulated in these decisions is simply another way of stating the question of whether the modification worked to "change the basic theory" of the offense or instead "did not alter the crime charged, nor unfairly surprise the defendants, nor create an opportunity for the government to prosecute the defendants again for substantially the same offense." *DeCavalcante,* 440 F.2d at 1272. In any event, even if *Gaither* and *DeCavalcante* could be interpreted to bar a "materiality" or "prejudice" inquiry into any actual amendments, such an interpretation would be flatly at odds with the Supreme Court's analysis in *Russell,* 369 U.S. at 770, 82 S.Ct. at 1050 and this circuit's holding in *United States v. Nicosia,* 638 F.2d at 976 (7th Cir. 1980). We believe that our decision in *Nicosia* reflects a sound judicial policy, for if we were to depart from our previous refusal to scrutinize actual amendments more strictly than variances, we would simply discourage the government from forthrightly admitting to formal mistakes at the start of trial and encourage it instead to simply wait until later in the trial to offer proof inconsistent with the indictment's facial allegations, even though the latter course of conduct obviously contains a greater potential for prejudice to the defendant.

Turning now more directly to the case at bar, we note that within the parameters of the "essential elements" and "prejudice" tests, corrections of misprinted offense dates are frequently permitted. In *United States v. Nicosia,* for example, this court permitted an amendment to correct a typographical error in the indictment which placed the consummation of the alleged witness-tampering scheme two months earlier than it actually occurred, on the basis that the "changes are immaterial to the charge" and the "defendant showed no prejudice to his defense." *Nicosia,* 638 F.2d at 976. *See also United States v. Powell,* 564 F.2d 256, 259 (8th Cir.1977) (indictment may be amended to extend time of conspiracy as time is not an essential element of conspiracy and no prejudice shown); *Jervis v. Hall,* 622 F.2d 19, 22–23 (1st Cir.1980) (amendment of date of alleged larceny by several weeks permissible where defendant failed to demonstrate that he would have altered his defense had the indictment read differently); *Krana v. United States,* 546 F.2d 785, 786 (8th Cir.1976) (change of one year in date of alleged offense permissible where defendant failed to show that he was

prejudiced thereby or that the date was material to the offense); *Stewart v. United States,* 395 F.2d 484, 487, 488 (8th Cir.1968) (amendment of date of alleged theft permissible where time "is not of the essence" in establishing the offense and the defendant was unable to show that he was not fully apprised of the charges against him).

We cannot say that the amendment of the alleged commencement date of the conspiracy here affected a "material element" of the conspiracy charge, causing prejudice to the defendant. An "essential" or "material" element of a crime is one whose specification with precise accuracy is necessary to establish the very illegality of the behavior and thus the court's jurisdiction. Only in rare cases is time a material element of the offense charged, even where continuing offenses such as conspiracy are alleged. *See* Wharton's Criminal Procedure, § 511 (12th ed. 1975).

For example, in the two cases cited by the defendant, *United States v. Goldstein,* 502 F.2d 526 (3d Cir.1976), and *United States v. Annoreno,* 460 F.2d 1303 (7th Cir. 1972), *cert. denied,* 409 U.S. 852, 93 S.Ct. 64, 34 L.Ed.2d 95, the precise date of the behavior was determinative of the very existence of the crime. In *Goldstein,* the defendant was charged with failing to file a tax return by April 15; when it had established that no such duty to file accrued until May 7, the court was held to be without the power to permit a concomitant amendment of the indictment. As the court noted on appeal,

> Ordinarily, a mere change in dates is not considered a substantial variation in an indictment, but an exception exists where a particular day may be made critical by the statute creating the offense.... The statute involved here illustrates this exception to the general rule. There was no duty imposed on the defendant to file a return before April 15. By way of contrast, a bank robbery really is a crucial offense at all times, regardless of the date on which it takes place.

*Goldstein,* 502 F.2d 528. Likewise, here the defendant's conspiracy to alter odometers was a criminal offense regardless of when it commenced. And unlike in *Annoreno,* where the commencement date of the conspiracy was held crucial because the statute proscribing the conspiracy was not in effect during the entire period encompassing certain alleged acts, *Annoreno,* 450 F.2d at 1307, the statute involved here was in effect in 1975 as well as in 1977.

Although the defendant strenuously argues that time was a crucial element in the establishment of a conspiracy, given the necessity of establishing the temporal coexistence of overt acts and the requisite unlawful intent, it does not appear that the failure to establish the simultaneity of existence of these conditions between 1975 and 1977 would have altogether eliminated the criminality of the conspiracy as a whole, thus denying the court of jurisdiction over the offense; in this sense, the precise temporal scope of the conspiracy was not an "essential element" necessary to constitute the offense. *Cf. Stirone,* 361 U.S. at 219, 80 S.Ct. at 274. We believe the better rule to be as stated in *United States v. Powell,* 564 F.2d 256 (8th Cir.1977), where, as here, a "clerical" amendment of the dates within which a conspiracy was alleged to have occurred was permitted. There, the court amended the indictment to extend the alleged pendency of the conspiracy in order to encompass government-offered proof of later overt acts. *Id.* at 259. The court held as matter of law that the terminal date of the conspiracy was not a "material element of the crime charged." *Id.*

Additional factors indicate that the amendment here caused no prejudice to the defendant. The defendant had adequate notice of the government's intent to introduce evidence relating to acts occurring prior to the incorrectly stated conspiracy commencement date. For example, count one of the indictment disclosed on its face the government's reliance on certain alleged acts in connection with two of the vehicles which occurred in 1976 and early 1977. In addition, the defendant had access to the full range of the government's evidentiary arsenal under the "open file" policy, and

was also aware that the government intended to prove, as testimony before the grand jury and FBI reports indicated, that the defendant employed a "roll back" mechanic as early as mid-1975. Finally, although the defendant had the indictment in hand for several months, the temporal discrepancy was not raised by the defendant until his motion a week before trial; he can therefore hardly be heard to complain that the error prejudiced his defense if his detailed scrutiny of the charging document came only at such a belated stage. Following *United States v. Powell*, 564 F.2d at 259, where the court found no prejudice in the alteration of the alleged time of the conspiracy in view of the defendant's receipt, well in advance of trial, of material indicating the government's reliance on overt acts occurring outside of the time period indicated on the face of the indictment, we find no violation of the defendant's Fifth Amendment rights in the present case.

### B. *Failure to Allege an Offense in Count Four*

In count four, the defendant was charged with violating the mail fraud statute, 18 U.S.C. §§ 1341, 1342,[3] between September, 1977 and July 28, 1978 by mailing to the Wisconsin Department of Transportation official registration and title documents containing the fraudulent odometer information. However, as the defendant noted to the court in his motion to dismiss the count, the indictment alleged that the mailing itself occurred on August 22, 1978, or nearly two months *after* the violation was alleged to have been completed. The defendant maintained that count four therefore failed to allege the occurrence of a crucial element of the offense, *i.e.,* the mailing, during the period of the offense, thus denying the court of jurisdiction on that count. As a result, the defendant maintains, the court erred in failing to dismiss the count.

On appeal, the government appears to offer two wholly contradictory and thus mutually exclusive theories upon which to base the court's jurisdiction over count four. Under one theory, set forth in the government's brief on appeal, the government affirms that the actual mailing date was August 22, 1978 as alleged but claims that this mailing contained a "lulling letter" which need not be mailed during the pendency of the scheme, under our decision in *United States v. Galloway*, 664 F.2d 161 (7th Cir. 1981); alternatively, under this first theory, the government argues that the allegation of a mailing outside the alleged period of the violation can be permitted as a nonprejudicial variance. Under a second theory, articulated by the government at oral argument, the *actual* date of the mailing was August 22, *1977*, and appears differently on the face of the indictment only due to a typographical error. Since the government did not specify at oral argument the full legal consequence of this fact, we can only interpolate that it intended to argue that the proof of the August 22, 1977 mailing should be accepted as a harmless variance, which is then encompassed by a putative amendment of count four which places the start of the scheme in 1975. We conclude that the first theory fails as matter of logic and that the second theory fails on logic, proof and policy.

---

**3.** Section 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

■ In proffering its first, "lulling letter" theory, the government relies upon cases establishing that jurisdiction under the mail fraud statute may lie even where letters designed to assure victims are mailed subsequent to the *actual fraud.* But here the government has alleged more: it alleged that the crucial mailing took place *outside of the period of the alleged statutory violation.* This allegation plainly does not support jurisdiction. As noted in *United States v. Brown,* 583 F.2d 659 (3rd Cir. 1978), even where a lulling letter constitutes the crucial mailing, "The completion of the scheme must depend in some way upon the mailings charged." 583 F.2d at 659. Here, the government, by indicating on the face of the indictment that *all* acts necessary to the completion of the offense had occurred by July 28, 1978, foreclosed its option of relying on subsequent mailings. This is not a case, as in *United States v. Sampson,* 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962), where the indictment specifically alleged that the span of the offense included within it the mailing of the lulling letters subsequent to the underlying fraud. *Id.* at 80, 83 S.Ct. at 175. By contrast, here the government indicated that all unlawful acts triggering the invocation of the statute had ended before the crucial letter was mailed. Similarly, the defendant's reliance on *United States v. Mandel,* 415 F.Supp. 997 (D.Md.1976), *aff'd in part en banc,* 591 F.2d 1347 (4th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1979), is misplaced, for there, unlike here, the indictment specified that the period of statutory violation extended to the time of the filing of the indictment, thus encompassing all mailings subsequent to the underlying fraud. *Mandel,* 415 F.Supp. at 1003.

■ It would simply defy logic to permit the maintenance of jurisdiction, as the government urges here, over an offense whose crucial jurisdictional act the government concedes occurred outside of the period in which the offense took place. Nor can this lapse be justified as a permissible "variance" of proof, for the occurrence of the mailing within the period of the offense is a predicate for the very existence of the crime, and is thus an "essential element" of the offense. *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1959); *United States v. Nicosia,* 638 F.2d 970, 976 (7th Cir.1980).

■ The government's second theory, which purports to base jurisdiction over count four upon the fact that the August 22, 1978 date was a typographical error and should have read August 22, 1977, was not fully explicated in oral argument, but we find that, even straining to supply for ourselves the necessary logical steps in the theory, there is no record or policy basis for reaching the proffered conclusion. While the record indicates that the mailing alleged in count four *was* proved at trial to have occurred on August 22, 1977, this proof, even if accepted as a "variance,"[4] would *still* not support jurisdiction, for the mailing would still be alleged to have occurred outside the period of the alleged offense, i.e., prior to September, 1977. Thus, it appears that on either its variance or "lulling letter" theory, the government missed the jurisdictional mark at both ends.

Perhaps the government intended to argue that the trial court amended count four to allege mail fraud commencing in 1975, thus encompassing the variance which would place the mailing in 1977. However, there would be two objections to such an argument. First, the record does not indicate that the government sought an amendment in relation to count four, although it did so expressly in relation to count two; nor is there an indication that the trial court believed that it had such a motion before it. Second, as a matter of judicial policy and Fifth Amendment principle, we would decline to engage in such acrobatic constructions to preserve the count. Especially where the government had one clear

---

4. In view of the crucial jurisdictional significance of the time of the mailing, we could not in any event permit a variance in relation to such an "essential" element of the offense. *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1959).

chance to effect all the necessary amendments, in the course of lengthy in-court proceedings focusing on the defendant's motion to dismiss, but instead chose to effect only one amendment,[5] we cannot adopt the government's position.

■ For the government to attempt to attach a variance, apparently undiscovered until oral argument on appeal, to the coattails of an amendment, apparently never requested, crosses the threshold of sloppiness and enters into the realm of prejudice to the defendant. Indeed, we fault the government's attempt to amend and vary its indictment and proof piecemeal, relying on mutually contradictory factual predicates and theories all the way to the appellate level. This is the sort of conduct which the Supreme Court found violative of the defendant's Fifth Amendment rights in *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) where

[a]t every stage in the ensuing criminal proceeding [defendant] was met with a different theory, or by no theory at all.... Far from informing [defendant] of the nature of the accusations against him, the indictment instead left the prosecutor free to roam at large ... to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal.

*Id.* at 768, 82 S.Ct. at 1049. At the first sign of error in its indictment the government should have carefully scrutinized the entire indictment, gathered all the errors and gone back to the grand jury for a correct supplemental indictment. By not doing so, the government has wasted the resources of all concerned and forfeited a conviction by the careless drafting of the fundamental document in the whole criminal process. We reverse defendant's conviction on count four.

C. *Omission of Certain Defense Instructions*

■ At the close of trial, the defendant proffered the following series of jury in-structions to the trial court, which were in turn read to the jury, with certain portions (underlined below) omitted:

It is the Defendant's theory in this case that John Cina and Russell Tolnai did not enter into an agreement, express or implied, with Frank Combs, a/k/a Arnold Schonscheck or Louis Torresin to cause odometers to be tampered with or to cause a concealment of the actual mileage of the vehicles which they offered to the public for sale.

Defendants contend that Combs/Schonscheck and Torresin did conceal the fact of the actual mileage on automobiles which they each sold to J.C. Motors from John Cina and Russell Tolnai.

You are instructed that if you find that Combs/Schonschek and Torresin did conceal the actual mileage on automobiles which they sold to J.C. Motors and that Cina and Tolnai believed that they could rely on the odometer statements provided by Combs/Schonscheck and Torresin, then you should find Defendants John Cina and Russell Tolnai not guilty of Counts 1, 2, 4, and 6 as well as Counts 7, 8, 9, and 10 of the indictment.

It is the further theory of Defendants that they were unaware of the mileage on a 1973 Datsun automobile which they claim was conveyed to J.C. Motors with a Dealer Transfer form showing the mileage to be 38,500 miles.

If you find that Defendants were not provided with actual evidence showing mileage on a 1973 Datsun to be greater than 38,500 miles, you should find the Defendants not guilty of Count [6] of the indictment.

It is the further theory of the defense that the odometer on a 1972 Cadillac DeVille automobile was replaced while the vehicle was being operated by John Cina and his wife Linda Noonan. If you find that the Defendants did not participate in

---

**5.** Indeed, we are puzzled as to why the government seems to have not even recognized the "typographical error" in count four until appel-late argument, since it so readily detected the error in count one. See n. 1, *supra.*

the tampering with the odometer originally a part of the 1972 Cadillac DeVille automobile, you should find the Defendants not guilty of Counts 3 and 11 of the indictment.

It is the further theory of the Defendants that the mailing of forms necessary to cause the registration of vehicles in the State of Wisconsin by automobile buyers of J.C. Motors was required by law of the State and was done in the same way for all automobiles sold. The Defendants contend that they did not cause the mails to be used for the purposes of completing an alleged scheme to defraud, but rather to comply with State law.

If you agree that the Defendants did not employ the United States Mails for purposes of completing a scheme to defraud but rather to comply with State law, you should find the Defendants John Cina and Russell Tolnai not guilty of Counts 2, 3, 4, and 5.

On appeal, the defendant claims that the omission of the underlined portions severely hindered the presentation of his theory of defense. However, we find no error in the trial court's excisions, for the pruned language was either duplicative of earlier instructions pertaining to requisite levels of defendant's knowledge, or positively misstated the law under which the defendant was charged.

Defendant's instruction pertaining to the jury's obligation to acquit the defendant of the conspiracy count if it found that the actual mileage of the automobiles was concealed from him or that he could have relied upon the misrepresentation of others, for example, merely restates the detailed knowledge and intent requirement spelled out by the trial court.[6] *Perez v. United States,* 297 F.2d 12 (5th Cir.1961), cited by defendant, is inapposite, for there, unlike here, the trial court refused to charge the jury with *any* instruction pertaining to the requisite knowledge and willfulness of the defendant. *Perez,* 297 F.2d at 15.

The meaning of defendant's proposed instruction requiring the finding of "actual evidence" of greater mileage on the vehicle named in count six[7] is unclear. There was documentary evidence pertaining to this court which suggested that the higher pre-

---

6. As the trial court instructed the jury:

The Defendants are presumed to be innocent of the charges. This presumption remains with each Defendant throughout every stage of the trial, and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that a particular Defendant is guilty.

\* \* \* \* \* \*

Unless the Governments [sic] proves beyond a reasonable doubt that a Defendant has committed every element of the offense with which he is charged, you must find him not guilty.

\* \* \* \* \* \*

What the evidence in the case must establish beyond a reasonable doubt is that the alleged conspiracy was knowingly formed and that one or more of the means or methods described in the indictment were agreed upon to be used in an effort to effect or accomplish some object or purpose of the conspiracy as charged in the indictment, and that two or more persons including one or more of the accused were knowingly members of the conspiracy as charged in the indictment.

When the word "knowingly" is used in these instructions, it means that the Defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance, mistake or accident.

\* \* \* \* \* \*

. . . [A] person who has no knowledge of a conspiracy but happens to act in the way that furthers some object or purpose of the conspiracy does not thereby become a conspirator.

Before the jury may find the Defendant or any other person has become a member of the conspiracy, the evidence in the case must show beyond a reasonable doubt that the conspiracy was knowingly formed and that the Defendant or other person who is claimed to have been a member willfully participated in the unlawful plans with the intent to advance or further some object or purpose of the conspiracy.

To act or participate willfully means to act or participate voluntarily and intentionally and with specific intent to do something the law forbids or with specific [intent] to fail to do something the law requires to be done.

7. The instruction as originally proffered to the court mistakenly identified the relevant count as count five.

tampering mileage was not indicated on the sale documents received when defendant purchased the vehicle. But there was also testimony that the defendant knew of the higher mileage despite the absence of such information on the documents and that he ordered the rolling back of the odometer on the vehicle at issue. If the instruction was merely intended to state the requirement of knowledge of defendant of the odometer tampering, it would have been mere surplusage, in view of the court's instruction in relation to this count that the jury, to convict, must find that "the defendant knowingly and wilfully committed this act or caused this act to be done." If, on the other hand, the instruction was intended to suggest that the defendant could not be convicted on this count unless the actual *documents* indicated a greater mileage, it was clearly inconsistent with the law, which requires only that the defendant possesses knowledge, not *documentary* knowledge.

Likewise, defendant's proffered instruction which stated that defendant was to be acquitted if he did not "participate" in the odometer tampering scheme was properly excised, for it was also either mere surplusage or misstated the applicable law. If the defendant intended to instruct the jury to acquit him unless his knowing and willful odometer alteration or causing of odometer alteration was proven, this instruction merely reinstated the knowledge requirement on which the jury was properly instructed. If, however, the defendant intended to require the jury to find actual *physical* participation in the altering of the odometer, his instruction misstated the law, which permits conviction upon merely causing such alteration to take place.

Defendant's final instruction which would have required acquittal on count four if defendant was found to have used the mails for the purpose of complying with state law was properly eliminated, for it flatly misstated the law. *See United States v. Galloway,* 664 F.2d 161, 164 n. 4 (7th Cir.1981).

In short, the full substance of the defendant's theory of the case was before the jury,

unlike in *Strauss v. United States,* 376 F.2d 416 (5th Cir.1967), where the court omitted language relating to the legal and factual basis of the defendant's position. *Strauss,* 376 F.2d at 418. Here, by contrast, only surplusage or incorrect statements of the law were omitted. We find no abuse of discretion in the trial court's judicious pruning of the proffered instructions. Consequently, we find no reversible error to have occurred in connection with the jury instructions on counts one, four, six or eleven.

## CONCLUSION

For the foregoing reasons, we affirm defendant's conviction on counts one, six and eleven of the indictment and reverse his conviction on count four.

AFFIRMED IN PART AND REVERSED IN PART.