**UNITED STATES of America, Plaintiff,**

v.

**Henry ANDREWS, Thomas Bates, Roger Bowman, Jeff Boyd, George Carter, Jackie Clay, Edgar Cooksey, Andrew Craig, Jerome Crowder, Lawrence Crowder, Floyd Davis, William Doyle, Harry Evans, Eddie Franklin, Bernard Green, Charles Green, Henry Leon Harris, Earl Hawkins, Louis Hoover, J.L. Houston, Eugene Hunter, Derrick Kees, Isiah Kitchen, Alan Knox, Sammy Knox, Roland Lewis, Felix Mayes, Melvin Mayes, Walter Pollard, Derrick Porter, Noah Robinson, Michael Sardin, James Speights, Anthony Sumner, Freddie Elwood Sweeney, Melvin Tillman, Edward Williams and Ricky Dean Williams, Defendants.**

**No. 89 CR 908.**

United States District Court, N.D. Illinois, E.D.

Dec. 28, 1990.

William Hogan, Ted Poulous, Asst. U.S. Attys., Chicago, Ill., for U.S.

Gary Ravitz, Chicago, Ill., for Henry Andrews.

Robert Clarke, Chicago, Ill., for Thomas Bates.

Kenneth Hanson, Chicago, Ill., for Jeff Boyd.

Peter Schmiedel, Chicago, Ill., for George Carter.

Victor Pilolla, Oak Park, Ill., for Edgar Cooksey.

Eugene O'Malley, Chicago, Ill., for Andrew Craig.

Carl Clavelli, Chicago, Ill., for Jerome Crowder.

Standish Willis, Chicago, Ill., for Lawrence Crowder.

Marianne Jackson, Chicago, Ill., for William Doyle.

Joshua Sachs, Chicago, Ill., for Charles Green.

Donald Paull, Chicago, Ill., for Louis Hoover.

Chris Averkiou, Chicago, Ill., for J.L. Houston.

Robert Raab, Chicago, Ill., for Isiah Kitchen.

Marc Kadish, Chicago, Ill., for Alan Knox.

Michael Falconer, Chicago, Ill., for Sammy Knox.

Keith Spielfogel, Chicago, Ill., for Roland Lewis.

Ron Clark, Chicago, Ill., for Felix Mayes.

Marty Agran, Chicago, Ill., for Derrick Porter.

Adam Bourgeois, Chicago, Ill., Robert F. Simone, Philadelphia, Pa., for Noah Robinson.

James Graham, Chicago, Ill., for Michael Sardin.

Ron Bredemann, Park Ridge, Ill., for James Speights.

Rick Jalovec, Chicago, Ill., for Freddie Elwood Sweeney.

June Fournier, RFD Long Grove, Ill., for Melvin Tillman.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The United States has moved for reconsideration of our *Andrews II* order of December 4, 1990, 754 F.Supp. 1197 (N.D.Ill. 1990) which adopted, with certain revisions, the bulk of the government's proposed changes to the severance plan outlined in our *Andrews I* order of November 6, 1990, 754 F.Supp. 1161 (N.D.Ill.1990). The government's concerns stem from its new claim that *Andrews II*, insofar as it does not wholly adopt the government's proposed changes, constitutes an impermissible amendment to the original indictment.[1]

---

1. We note that this argument is one that could have been (but was not) raised in the government's response to the plan proposed in *Andrews I*. That order contained the same pertinent features as *Andrews II* which the government now contends constitute an impermissible amendment to the indictment. Such afterthoughts are ordinarily not even considered on

For the following reasons, we grant the motion in part and vacate a portion of our *Andrews II* order.

The government contests our preclusion of certain counts and evidence from the initial trials of this action. In particular, it challenges our: (1) holding in abeyance at Trial One the Count Three narcotics conspiracy, also alleged as predicate act 31 of the RICO counts that will be tried in Trial One; (2) holding in abeyance at Trial One the prosecution of Edgar Cooksey for the predicate act of murdering Charmaine Nathan, which will be tried against other defendants in Trial Two; (3) limiting the government's proof of murders in each of the trials only to those murders that may be proved as predicate acts against the defendants at each trial, so long as the defendants do not intend to cross-examine the government's witnesses concerning other murders alleged as part of the general conspiracy; and (4) ordering the separate trial of Alan Knox in light of the fifty-four year sentence he is currently serving.

### I.

With respect to points 1–3, the government claims that by refusing to allow it to try certain counts and racketeering acts charged in the indictment, and by precluding evidence of violent acts allegedly committed in furtherance of the RICO conspiracy at each trial, we have impermissibly amended or modified the indictment in violation of the Fifth Amendment.[2] In support of this claim, the government relies on a series of cases discussing the Fifth Amendment ramifications of indictment modification or amendment. *See Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); *United States v. Cina*, 699 F.2d 853 (7th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983); *United States v. Nicosia*, 638 F.2d 970 (7th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981); *see also United States v. Ford*, 872 F.2d 1231 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990); *United States v. Beeler*, 587 F.2d 340 (6th Cir.1978), *cert. denied*, 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981); *United States v. De Cavalcante*, 440 F.2d 1264 (3d Cir.1971); *Gaither v. United States*, 413 F.2d 1061 (D.C.Cir.1969). These cases suggest that an amendment or modification of the indictment is impermissible under the Fifth Amendment when it changes the basic theory of the offense, alters the crime charged, unfairly surprises the defendants, or creates an opportunity for the government to prosecute the defendants a second time for substantially the same offense. *Cina*, 699 F.2d at 858. The government purports to rely on all four of these harms, but its discussion exclusively focuses on the last—the double jeopardy concern.[3] The government maintains that subsequent trials of counts held in abeyance, in particular any subsequent RICO trial based on predicate acts originally indicted but held in abeyance, would violate double jeopardy and effectively preclude it from ever trying the defendants on these charges. In other words, the government claims that we have usurped the charging function of the grand jury in violation of the Fifth Amendment. *See Stirone*, 361 U.S. at 218, 80 S.Ct. at 273–74.

---

a motion for reconsideration. We will, however, address this final concern in the interest of resolving all lingering pretrial issues in this highly complex matter.

**2.** The text of the Fifth Amendment, in pertinent part, reads: No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ...; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb....

U.S. Const. amend. V.

**3.** As for the other *Cina* harms, the government has pointed to no aspect of the severance plan that either changes the basic theory of the charged offenses or otherwise alters the crimes charged. Certainly, the plan has not unfairly surprised the defendants; they know well in advance of trial the charges and predicate acts for which they will be tried in both the initial trials and any trial of the matters held in abeyance.

■ There is a fundamental problem with the government's "amended indictment" argument—it has no standing to raise the particular challenges asserted here. In considering a claim that an indictment has been impermissibly modified, we are constitutionally concerned only with changes to an indictment that materially "affect the substantial rights" of the accused. *Cf. Berger*, 295 U.S. at 82, 55 S.Ct. at 630. The right to invoke the Fifth Amendment protections at issue here belongs to the accused, not the government. Each of the many cases upon which the government relies involved the invocation of Fifth Amendment protection by the accused against allegedly prejudicial modifications. The government has failed to point to any case in which the prosecution was allowed or even attempted to serve as an accused's Fifth Amendment guardian. We see no reason to let the government step in on behalf of the defendants in this case, particularly in light of the fact that the government's end aim is not to ensure vindication of the defendants' Fifth Amendment rights, but rather to bolster its own interest, for whatever reason, in seeing as much of its original, unsevered indictment as possible tried in each of the now severed trials.

In fact, the government's surrogacy would appear to be unwelcome. Our discussion in both *Andrews I* and *Andrews II* makes clear that in order to effectuate the severance sought by defendants it would be necessary to hold many counts in abeyance and to limit the number of predicate acts proved with respect to the RICO counts at the initial trials. Other than a possible RICO double jeopardy concern, the government has failed to identify any other double jeopardy problem posed by our plan. With respect to the RICO contention, the government cites no authority upon which its fear is based. We found one case that

might apply. *See United States v. Ciancaglini*, 858 F.2d 923 (3d Cir.1988). To the extent that this concern is legitimate, however, it is one that has always been plainly evident to the defendants.[4] Yet, not a single defendant has objected to the plan after having had a clear opportunity to do so. *See, e.g., Andrews I*, mem. op. at 1189 ("we will accept proposals from any of the parties regarding suggested improvements to our severance plan ..."). Further, none of the defendants has attempted to respond to or join in the government's instant motion for reconsideration. The defendants are apparently willing to accept the potential but remote double jeopardy risk created by our plan in return for the comparative advantage of the trials as severed. *Cf. United States v. Shea*, No. 90–10204–K, 1990 WL 264541 (D.Mass. Dec. 13, 1990) (two of twenty-three defendants responding to severance order raise double jeopardy objections).

■ Indeed, even when viewed from the government's perspective, the indictment may be deemed "modified" only to the extent that double jeopardy would bar prosecution of all of the counts and predicate acts held in abeyance. Yet, by electing not to object to the plan's provision for holding in abeyance certain counts and predicate acts for subsequent trial, the defendants have effectively waived any double jeopardy problems. *See, e.g., United States v. Goodstein*, 883 F.2d 1362, 1367 n. 3 (7th Cir.1989) (failure to challenge vagueness of indictment), *cert. denied,* —— U.S. ——, 110 S.Ct. 1305, 108 L.Ed.2d 481 (1990); *United States v. Monzon*, 869 F.2d 338 (7th Cir.) (failure to properly raise Fifth Amendment *Miranda* challenge), *cert. denied,* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). Thus, there is no barrier to prosecution for the government to complain about.[5]

---

4. Indeed, such a potential exists any time an indictment is severed or, especially, when counts are held in abeyance.

5. Because we have specified in advance of trial the counts to be held in abeyance, without objection from the defendants, the government does not stand to lose the opportunity ultimately to try the defendants for all of the crimes

charged. Thus, in achieving the objectives of severance, we have not had to resort to options that are more invasive and not nearly as sensitive as our plan is to any concern about grand jury or prosecutorial charging prerogatives, but which nevertheless have been adopted by other courts. For example, in *Shea,* a case in which certain defendants did raise double jeopardy

We need not address the merits of the double jeopardy issue in light of the government's lack of standing to assert the defendants' Fifth Amendment rights and the defendants' waiver of any Fifth Amendment problems. And the government has offered no other grounds or theory upon that would otherwise justify its intervention based on the Fifth Amendment. Accordingly, the matters held in abeyance, including Edward Cooksey's involvement in the Charmaine Nathan murder, shall remain in abeyance.

## II.

Notwithstanding the Fifth Amendment claim, the government also contends that we have impermissibly suppressed evidence critical to its success on the charges that we have permitted it to prosecute in the initial trials. In particular, the government believes that it would be impossible to establish the requisite pattern and continuity under RICO unless, in addition to proof of the many violent acts and drug-related activities presently allowed under the severance plan, we also permit it to prove every alleged murder and violent act, and every isolated drug transaction alleged to have taken place as part of a narcotics conspiracy spanning the twenty-four year history of El Rukn activity.

Consistent with the views espoused in *Andrews I* and *Andrews II*, we continue to believe that the mass of proof that the government seeks to introduce would be unnecessarily cumulative, would waste a tremendous amount of time, and would tend to mislead and confuse the jury. These were among the specific reasons that justified severance in the first place. Rule 403 of the Federal Rules of Evidence clearly grants us the discretion to act as we

have done to limit evidence that may be relevant, but unnecessary. In light of the government's vehement objections at this relatively early stage of the proceedings, however, we shall give it the benefit of the doubt and reconsider the scope of our evidentiary limitation. Though by no means are we convinced that "compelling reasons" exist that would require the presentation of all of this evidence, it may be that our order was in some limited respects unduly, perhaps prematurely, restrictive. Accordingly, we vacate our order in *Andrews II* as to the exclusion of certain evidence under Rule 403. We shall revisit these evidentiary issues at the time of trial, when we are afforded the opportunity to consider this evidence in its most pertinent context.

We vacate the Rule 403 exclusions reluctantly. We have attempted throughout the pretrial period to streamline both trial preparation and the actual trial itself. Our pretrial rulings under Rule 403 were designed, at least in part, to simplify preparation for all parties. Indeed, we purposefully issued these rulings in *Andrews I* and *Andrews II* to reduce the costs in time and money of trial preparation. We certainly were not required to make rulings of this nature as early as we did. Vacating these Rule 403 decisions grossly enlarges the body of evidence that must be digested prior to trial, and means that it will be more difficult both for the government to properly train additional prosecutors and for new defense attorneys to adequately prepare for trial.

Thus, as trial draws near, the government would be well-advised, before it fully commits both its own resources and those of court-appointed defense counsel, to carefully re-examine its evidentiary posture to

---

objections to a proposed severance plan that both required severed trials and held counts in abeyance, Judge Keeton tentatively decided to allow a severed trial to go forward against five defendants

> on all the counts with which they have been charged in the indictment, but with notice to the government that if, in the midst of trial, the court determines that the trial will be unduly long if the government is permitted to present evidence with regard to every count

against the five defendants, the court may order a further severance of counts as necessary. The court calls attention to the possibility that, jeopardy having attached at the beginning of trial, such an order may affect the possibility of a later trial of those counts against a defendant that are severed in the midst of trial over the objection of that defendant.

*Shea,* mem. op. and proc. order at 4.

ensure compliance with the overriding objectives of severance. Our goal in *Andrews I* and *Andrews II* was to provide a workable severance plan that would not only prevent overlapping proof as between the initial trials, but would also limit the extent, if any, of overlap with respect to the matters held in abeyance. By seeking to prosecute the entire realm of alleged El Rukn criminal activity at each and every individual trial, the government seeks to eviscerate the sine qua non of our severance obligations. Therefore, although we vacate the Rule 403 rulings at this juncture, at trial the government will have to present persuasive justification for admitting the morass of evidence we are otherwise inclined to exclude.

### III.

We deny the government's motion to reconsider our decision to place defendant Alan Knox as a single defendant in Trial Five. The government implies that our action somehow usurps the prosecutorial decisions "which the Constitution wholly commits to [its] discretion." Mem. at 10. Yet our severance plan in no way prevents the trial of Alan Knox, nor does it preclude the government from ultimately trying Knox for each of his alleged crimes. If the government wishes to try further a man already serving a virtual "life" sentence, it may of course do so. But that alone does not require us to either expedite or combine Knox's trial, particularly when more pressing matters—the trial of other defendants in this indictment who have been incarcerated for more than a year under preventative detention—deserve higher priority.

### IV.

The government has pointed out in a footnote that we did not include the weapons charges (Counts 172 and 173) in Trial Four against defendants Sardin and Speights. Since these charges apparently stem from the same search warrant and seizure that led to narcotics charges already included in that trial, we shall amend our plan with respect to Trial Four and add these additional counts.

### CONCLUSION

We grant the government's motion to reconsider only with respect to the Rule 403 determinations, which we now vacate subject to renewed consideration at the time of trial. We amend our severance plan to include Counts 172 and 173 in Trial Four. In all other respects the motion to reconsider is denied. It is so ordered.