UNITED STATES of America, Plaintiff,

v.

Henry ANDREWS, Thomas Bates, Roger Bowman, Jeff Boyd, George Carter, Jackie Clay, Edgar Cooksey, Andrew Craig, Jerome Crowder, Lawrence Crowder, Floyd Davis, William Doyle, Harry Evans, Eddie Franklin, Bernard Green, Charles Green, Henry Leon Harris, Earl Hawkins, Louis Hoover, J.L. Houston, Eugene Hunter, Derrick Kees, Isiah Kitchen, Alan Knox, Sammy Knox, Roland Lewis, Felix Mayes, Melvin Mayes, Walter Pollard, Derrick Porter, Noah Robinson, Michael Sardin, James Speights, Anthony Sumner, Freddie Elwood Sweeney, Melvin Tillman, Edward Williams and Ricky Dean Williams, Defendants.

No. 89 CR 908.

United States District Court,
N.D. Illinois, E.D.

Dec. 4, 1990.

William Hogan, Ted Poulous, Asst. U.S. Attys., Chicago, Ill., for U.S.

Gary Ravitz, Chicago, Ill., for Henry Andrews.

Robert Clarke, Chicago, Ill., for Thomas Bates.

Edna Selan Epstein, Chicago, Ill., for Jeff Boyd.

Sheldon Nagelberg, Chicago, Ill., for George Carter.

Victor Pilolla, Oak Park, Ill., for Edgar Cooksey.

David Thomas, Chicago, Ill., for Andrew Craig.

Carl Clavelli, Chicago, Ill., for Jerome Crowder.

Standish Willis, Chicago, Ill., for Lawrence Crowder.

Marianne Jackson, Chicago, Ill., for William Doyle.

Rick Halprin, Chicago, Ill., for Charles Green.

Jim Epstein, Chicago, Ill., for Louis Hoover.

Chris Averkiou, Chicago, Ill., for J.L. Houston.

Robert Raab, Chicago, Ill., for Isiah Kitchen.

Marc Kadish, Chicago, Ill., for Alan Knox.

James A. McGurk, Chicago, Ill., for Sammy Knox.

Keith Spielfogel, Chicago, Ill., for Roland Lewis.

Ron Clark, Chicago, Ill., for Felix Mayes.

Marty Agran, Chicago, Ill., for Derrick Porter.

Adam Bourgeois, Chicago, Ill., Robert F. Simone, Philadelphia, Pa., for Noah Robinson.

James Graham, Chicago, Ill., for Michael Sardin.

Ron Bredemann, Park Ridge, Ill., for James Speights.

Rick Jalovec, Chicago, Ill., for Freddie Elwood Sweeney.

June Fournier, RFD Long Grove, Ill., for Melvin Tillman.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On November 6, 1990, the defendants' motions to sever this action were granted pursuant to Federal Rule of Criminal Procedure 14. However, we temporarily stayed execution of the order to consider proposals from any of the parties to improve the severance plan outlined in the Court's opinion. For the following reasons and the reasons set forth in *United States v. Andrews*, 754 F.Supp. 1161 (N.D.Ill.1990) ("*Andrews I*"), we confirm our November 6, 1990 order granting severance, but revise the plan in the manner outlined below.[1]

### I. Background

The 175–count, 305–page indictment, returned on October 6, 1989, names thirty-eight defendants and alleges well over 250 factually separate criminal acts committed over a time span of more than twenty years. A single, mammoth trial of these diverse crimes—a mega-trial—would last a year or more and require the attendance of more than one hundred witnesses, dozens of court and security personnel, and over twenty defense attorneys. Based on the undesirable prospect of such a trial and the consequent likelihood of severance, we long ago began to consider the difficulty of developing a coherent scheme to sever the indictment's monolithic and twisted maze of charges and defendants. Because at

any time prior to trial the government is the only party with complete knowledge of the evidence that it intends to present, we sought its assistance in devising an efficient and effective severance plan.

On May 10, 1990, we issued an order requesting the government to

propose a plan to sever this case into several trials (by defendants and/or counts) in the event the defendants' motions to sever are granted ... [and to] consider whether the interests of justice would be adequately served by limiting the prosecution of individual defendants to charges that can be proven expeditiously and that, in the event of conviction, carry exposure to maximum penalties.

*Cf. United States v. Casamento*, 887 F.2d 1141, 1152 (2d Cir.1989) (district court should request government input when severing mega-trial), *cert. denied*, — U.S. ——, 110 S.Ct. 2175, 109 L.Ed.2d 504 (1990). In its May 31, 1990 brief vigorously opposing severance, the government declined this request to propose a plan. It stated that "despite great discussion and diligent consideration of the Court's directive, [the government] is unable to present feasible suggestions which would appreciably shorten these proceedings even if they were severed in some form." Government's Brief at 43. The government then went to great lengths to show that, due to the wide-ranging and overlapping offenses of the defendants, an efficient severance plan was not feasible. *Id.* at 43–47. It additionally argued that the difficulties of the proposed single trial were overstated by the defendants. *Id.* at 29–35. Later, at a pretrial conference on August 31, 1990, we again requested suggestions from the government regarding an appropriate severance plan and asked it to consider dismissing some of the counts. The government also declined this invitation to propose a plan. Instead, it continued to insist that the trial could only be

---

1. Our revised severance plan is summarized in chart form as Appendix A to this opinion. This chart lists Racketeering Acts to be tried at each trial according to their designation in Count

Two, substantive RICO. Of course, evidence of racketeering activity for the purposes of Count One, RICO conspiracy, will be limited to the same acts.

tried as indicted and flatly stated that it would not dismiss any counts.

Thus, on November 6, 1990, without input from the government, we granted severance and devised a severance plan that separated the defendants into five non-overlapping groups. But, to ensure that the plan fairly reflected the legitimate interests of all the parties, we temporarily stayed execution of the order to consider suggested improvements to our severance plan consistent with our stated goals.

On November 9, 1990, the government filed a motion for continuance of the stay to allow it more time to submit an alternate severance plan. Surprisingly, in this motion, the government states that it had "always recognized the manageability problems caused by this case," and that it had long been willing to " 'participate in the formulation of a severance plan.' " [2] Government's Motion, at 1 n. 1 (quoting *Andrews I*, at 1181). Notwithstanding our unequivocal requests for a proposed government plan and our repeated concerns about the difficulties of a joint megatrial, the government also suggests that it waited to submit a meaningful severance proposal until the Court granted severance and "provided guidance on this matter." [3] *Id.* These assertions are not at all consistent with the government's previous unwav-

ering conduct and, quite frankly, we find them somewhat disingenuous. In any event, the government now has recognized, as it should have when the indictment was returned on October 6, 1989, that the responsibility for returning a "sane" indictment is first and foremost on its shoulders. *See Andrews I,* at 1179.

Now, more than a year after the indictment's return, after stonewalling this Court for many months, after being confronted with the imminent possibility of a severance plan being imposed upon it, and after "discovering" the manifest difficulties of a single trial, the government finally offers an extensive and detailed plan of its own. Remarkably, this proposed plan, submitted only a week after the Court granted severance, is indeed a "feasible suggestion[ ] which would appreciably shorten these proceedings." Government's Brief at 43 (May 31, 1990). Also, despite its earlier refusals to do so, the government proposes the dismissal of dozens upon dozens of counts and RICO racketeering acts. In its suggested Trial One, it proposes the dismissal of fifty counts and eleven murder conspiracies. In its suggested Trial Two, it proposes the dismissal of seven murder conspiracies and numerous narcotics offenses. In its suggested Trial Three, it proposes to drop every single violent racke-

**2.** The government specifically notes that it requested the August 31, 1990 pretrial conference and it now suggests that its purpose in doing so was to contribute to a potential severance plan. Government's Motion, at 1 n. 1. This contention is belied by the government's conduct at that conference. Although there was not a court reporter present at the meeting, the Court and its two law clerks recall that the government did no more than present a "sales pitch" for a single trial. With the use of a number of complex charts, the government attempted to demonstrate that severance was not feasible due to the multitude of overlapping crimes. It never made even a vague reference to any proposed severance plan. If the government's purpose was to "participate in the formulation of a severance plan," it was not at all evident to this Court.

At the conclusion of the August 31, 1990 conference, one of the Assistant United States Attorneys handed one of the Court's law clerks a single sheet of paper with a handwritten chart that divided the defendants into two groups, which paper was not filed with the Clerk of the

Court, may or may not have been served on the defendants, and, in any event, was not viewed by the Court until after it was referred to in the government's Plan. Now, in disputing our statement that it "declined" our invitations to propose a severance plan, the government construes this "exchange" as an attempt to furnish the Court with a severance proposal. Government's Plan, at 59 n. 3. While the proffered chart could be considered a vague "blueprint" of a plan, the manner in which it was presented and its lack of any supporting explanation, coupled with the government's stance during the conference, made it a dubious attempt at best. It is also worth noting that the government did not mention that it had purportedly furnished the Court with a proposed severance plan in its motion for continuance, when it first disputed our characterization of its posture in this case.

**3.** We wonder, however, how the government could have known that we would "provide guidance" and give it additional time to heed that guidance rather than simply issue a final severance plan.

teering act against nine defendants and to rely instead solely upon narcotics-related racketeering acts to obtain RICO convictions. The violent racketeering acts the government is willing to dismiss at Trial Three include fourteen murder conspiracies, in which five defendants are charged with eleven or more acts, one defendant is charged with five, and another defendant is charged with four.

To the government's credit, its proposed plan is a good faith and largely successful effort to divide this immense case into manageable and fair trial units. We commend the government for this effort.[4]

## II. Severance Plan

### A. Plan Overview

The plan that the government proposes significantly differs from the Court's plan, but is nonetheless consistent with the our stated severance goals. In our original plan, believing that they were the more serious crimes, we made a great effort to retain the numerous murder conspiracies charged against the various defendants. The government's plan, with respect to nine of the defendants, casts these charges aside and instead focuses on the narcotics charges. This willingness to forgo the murder conspiracies simplifies the severance task immensely and, unlike the indictment, creates "neatly severable groups." *Andrews I,* at 1183. Because the government is in the best position to assess the strength of its own case, we see no reason to refuse its choice to concentrate on narcotics charges, rather than murder conspiracies, for many of the defendants. So, consistent with the goals of our severance plan as they are expressed in *Andrews I,* we adopt this change in focus. As stated in *Andrews I,* among other considerations, we "sought to ensure that the introduction of evidence at trial is not so restricted as to

unduly impair the government's case against any defendant or its opportunity to secure a conviction carrying significant penalties." *Id.* at 1181. Changing the plan as the government suggests presumably advances this goal and, as the plan is outlined below, does not detract from our other stated goals.

Using the government's plan as a framework, the defendants will be divided into five non-overlapping groups to be tried at five separate trials. As in our original plan, the government will be permitted to try each of the defendants for Counts One and Two, RICO conspiracy and substantive RICO respectively, but will not be permitted to try all of the underlying racketeering acts at every trial. Some of these acts will be divided between the trials with minimal overlap and others will not be tried at all. A severance plan of this nature, with non-overlapping defendants and a minimum of overlapping evidence, advances all of the severance goals we expressed in *Andrews I.* As stated in that opinion, in addition to a concern with the strength of the government's case, we "sought to drastically reduce the volume of evidence against each defendant unrelated to his active participation in El Rukn affairs and his alleged crimes ... [and to] limit the duplication of evidence at the separate trials [so as] to minimize aggregate trial time and the corresponding expenditure of both public and judicial resources." *Id.* With these concerns in mind, the defendants will be tried pursuant to the severance plan outlined below.

### B. Trial One

■ Trial One will include defendants Jeff Boyd, Edgar Cooksey, Andrew Craig, Charles Green, Sammy Knox, Felix Mayes, and Noah Robinson.[5] Each of these defen-

---

4. Our detailing of the government's prior lack of responsiveness is not meant to be unduly accusatory. As we stated at the November 20, 1990 status hearing, what has transpired is history and the Court holds absolutely no rancor towards the government because of the questionable pretrial machinations of its able prosecutors in this case. However, in light of the government's somewhat inaccurate recollections of the events that led to *Andrews I,* it is necessary for

the Court to document some of this history, since the considerable time, effort and expense by all involved in *Andrews I* was required solely because of the government's initial insistence on pursuing a hopelessly flawed trial scheme.

5. Robinson argues that he should be given a separate trial because he is not an alleged "member" of the El Rukn street gang. We do not find this fact significant. Whether a mem-

dants will be tried for the violent crimes in which, according to the government, he was a "direct participant." This includes the murders of Gilbert Connors, Gregory Freeman, Willie McLilly, Roy Love, and Mickey Cogwell, and the McKinley kidnapping, as well as the King Cobra murder conspiracy and the related murders and attempted murders. The numerous crimes in which Robinson is the central figure, including the Leroy Barber murder, the Robert Aulston murder attempt, and the various acts of witness tampering against Janice Rosemond and Henry Leon Harris, will also be tried at Trial One. The Trial One crimes are alleged as Racketeering Acts 1 through 4 and 19 through 30, and charged in Counts Four through Sixteen and One Hundred Seventy–Five.

■ For primarily two reasons, the government also proposes the inclusion of the extensive twenty-three year narcotics conspiracy charged as Count Three and Racketeering Act 31 in violation of 21 U.S.C. § 846 (1988). First, according to the government, inclusion of the § 846 conspiracy furthers our objective to ensure the maximum penalties against these defendants because this crime carries a mandatory minimum sentence of thirty years to life without parole. Second, the government contends that the evidence of this conspiracy is essential to an understanding of the El Rukn organization and is relevant to most of the charged murders. We do not find either of these reasons compelling. We do not share the government's concern

with the severity of the penalties that these defendants are facing. Even without the § 846 conspiracy, each of the Trial One defendants will be tried for anywhere from three to eight counts and, with the exception of F. Mayes, are facing, at a minimum, a potential sentence of natural life plus forty years.[6] F. Mayes, who is forty-one years old, faces potentially fifty years in prison for convictions for RICO conspiracy, substantive RICO, and witness intimidation under 18 U.S.C. § 1512(b)(3). We also do not share the government's concern regarding the necessity of the narcotics conspiracy evidence to an understanding of the El Rukn enterprise and the charged murders. To the extent that evidence of narcotics trafficking is directly related to these matters, such evidence will be properly admitted anyway. It is, however, not necessary to unduly lengthen this trial, already the longest of the five trials, with extensive evidence of drug activity that is not directly related to these matters. Therefore, in the interest of minimizing the length of this trial, we do not include the § 846 narcotics conspiracy among the charges to be tried at Trial One. It is held in abeyance.

The only other offense that will be tried at this trial will be Count 170, which charges C. Green with a weapons possession offense in violation of 18 U.S.C.App. § 1202(a)(1) (1988). According to the government, evidence of this offense will be presented in connection with the King Cobra conspiracy. As such, its inclusion at this trial will not unduly complicate matters.[7]

---

ber or not, Robinson is charged with numerous crimes that were, according to the indictment, intimately connected to El Rukn affairs and were purportedly committed in concert with numerous other El Rukn members.

6. At a pretrial conference on November 20, 1990, the government asserted that Sammy Knox did not face a life sentence absent the § 846 conspiracy charge. This is not correct. Knox faces a potential life sentence for his alleged participation in the McKinley kidnapping, charged as Count 175. *See* 18 U.S.C. § 1959(a)(1) (1988) (formerly 18 U.S.C. § 1952B). Defendant Boyd also faces a potential life sentence for this kidnapping and an additional life sentence for the murders of Rico Chalmers, Glendon McKinley, and Vickie Nolden, charged in Count Seven. *See id.* Defen-

dants Cooksey and Robinson could be sentenced to natural life for the Barber murder, charged in Count Nine. *See* 18 U.S.C. § 1958(a) (1988) (formerly 18 U.S.C. § 1952A). Finally, Defendants Craig and Green face life imprisonment for the murder of Robert Jackson, charged in Count Six. 18 U.S.C. § 1959(a)(1). Each of these defendants could also be sentenced for an additional forty years for RICO conspiracy and substantive RICO convictions, and some face even further penalties for other charges.

7. The government also requests that we include the murder of Charmaine Nathan, charged as Racketeering Act 13, among the crimes to be tried at Trial One. The only defendant at this trial who was an alleged "active participant" in this murder is Cooksey, who the government

## C. Trial Two

■ Henry Andrews, George Carter, William Doyle, J.L. Houston, and Derrick Porter will be tried together at Trial Two. As with the Trial One defendants, this group will be tried for the violent crimes in which they were allegedly "direct participants." These crimes include the Titanic Stones, Audrina Thomas, Chalmers Tyler, and Ewing brothers murder conspiracies and the related murders and attempted murders, as well as one act of witness tampering committed against Henry Leon Harris. The witness tampering is charged as Count Fifteen and alleged as Racketeering Act 28(b). The other included crimes, alleged as Racketeering Acts 5, 6, 9, 10, and 13–18, are not charged as substantive counts. The only overlap between the crimes to be tried at Trials One and Two is Count Fifteen, the witness tampering charge. This charge is included here based largely upon the government's representation that the charge can be proven expeditiously.[8]

This group will also be tried for the § 846 narcotics conspiracy charged in Count Three and alleged as Racketeering Act 31. Based on the government's representations to this Court, evidence of this charge will be "quite circumspect," specifically focusing, for the most part, on the narcotics activities of only the five defendants in this group. Government's Plan at 73. There are primarily two reasons that we include this charge here but did not include it in Trial One. The first is that Trial Two will be a much shorter trial than Trial One even with the addition of the conspiracy. Second, although facing substantial sentences, none of the Trial Two defendants face life sentences without the § 846 charge.

■ Trial Two will also include three narcotics-related offenses charged against Carter and Doyle because, according to the government, these crimes are direct evidence of the § 846 conspiracy and can be proven in a short amount of time. Doyle will be tried for Racketeering Act 32, charging him with traveling in interstate commerce to distribute cocaine in violation of 18 U.S.C. § 1952, and Racketeering Act 33, charging him with cocaine distribution in violation of 21 U.S.C. § 841(a)(1). Neither of these crimes is charged as a separate substantive count. Carter will be tried for one count of distributing cocaine in violation of 21 U.S.C. § 841(a)(1), charged as Count Seventeen and alleged as Racketeering Act 34. This group will not be tried for any further crimes.[9]

## D. Trial Three

Defendants Thomas Bates, Jerome Crowder, Louis Hoover, and Ronald Lewis will be tried together at Trial Three. Since the government has agreed to dismiss every violent racketeering act charged against these defendants, they will be tried solely for narcotics offenses, including the § 846 conspiracy charged in Count Three and alleged as Racketeering Act 31. They will also be tried for numerous individual offenses in violation of 21 U.S.C. § 841(a)(1), the possession and distribution of narcotics, and 21 U.S.C. § 843(b), the use of a communication facility to further various narcotics offenses. These offenses are charged as Counts Twenty–Four, Twenty–Six, Forty–

---

contends was a "driver" for the Nathan hit team. The murder will be tried at Trial Two, and we decline to also include it at Trial One. It is intertwined with the Titanic Stones murder conspiracy and related crimes, which are also being tried at Trial Two. Thus, to include it at Trial One would cause significant overlap and unduly increase the length of this trial.

8. While we believe the government is underestimating when it contends that this charge "will consume only several minutes of trial time," Government's Plan at 72, we do not expect evidence of the charge to last more than a couple of hours.

9. The government also requests that we add the Hall and Davis murder conspiracies, charged as Racketeering Acts 12 and 13, to the crimes tried at Trial Two. We decline to do so. Under the severance plan as it stands, each of the defendants in this group are charged with between six and ten racketeering acts. Consequently, the addition of two further murder conspiracies seems wholly unnecessary and would amount to a needless waste of trial time. See Andrews I, at 1183–1184. For this reason, Racketeering Acts 12 and 13 are not included at Trial Two.

# 1204

Eight, Sixty, Sixty–Five, Sixty–Seven, Eighty–Six, One Hundred Forty–Six, and One Hundred Forty–Nine, and also alleged as Racketeering Acts 41, 43, 66, 78, 83, 85, 99, 116, and 118.

## E. Trial Four

Trial Four will include Lawrence Crowder, Isiah Kitchen, Michael Sardin, James Speights, and Melvin Tillman. The government has also agreed to dismiss all of the violent racketeering acts against this group of defendants. Consequently, as with Trial Three, Trial Four will be substantially limited to the § 846 conspiracy and additional discrete narcotics offenses charged individually against the defendants. These additional offenses will include thirteen acts in violation of 21 U.S.C. § 841(a)(1) and two acts in violation of 21 U.S.C. § 843(b). They are charged as Counts Twenty through Twenty–Three, Twenty–Five, Thirty, One Hundred Fifty–Nine, and One Hundred Sixty through One Hundred Sixty–Eight and alleged as Racketeering Acts 37, 38, 39, 40, 42, 45, 47, 49, 125, 126, and 127.[10]

This trial will also include a firearms offense charged against Kitchen in Count One Hundred Seventy–Four. According to the government, this offense, which carries a mandatory minimum sentence of fifteen years, is intertwined with Count One Hundred Sixty–Eight, which is also charged against Kitchen and is included in this trial. Consequently, the addition of this weapons offense will not complicate this trial.

The government's proposed plan had suggested a single nine defendant trial for the defendants we divided between Trials Three and Four. At a pretrial conference on November 20, 1990, the government stated that if we divided these defendants into two groups, as we have, the result would be two trials that would last as long as a single trial of the whole group. This

contention is not consistent with the position that it took in its proposed plan. There, the government states:

> In order to establish the nature and scope of the narcotics conspiracy, [the cooperating] witnesses will provide a general description of the El Rukn narcotic distribution network. Thereafter, their testimony will by and large focus directly upon the narcotics activities of the defendants in this group.

Government's Plan at 76. Thus, at the very least, the time that is required to try each group will be reduced by the time it takes to present the evidence that "focuses directly upon the narcotics activities of the defendants" in the other group. Judging by the number of individual narcotics offenses charged and the alleged twenty-three year length of the conspiracy, evidence of each defendant's narcotics activities will be very extensive. Consequently, we believe that dividing the government's proposed Trial Three into two trials will more effectively serve the goals of our severance plan.[11]

## F. Trial Five

Defendant Alan Knox will be tried separately in Trial Five. Knox's circumstances are unique among these defendants. As we noted in *Andrews I,* his conviction in another federal case has been recently affirmed by the Seventh Circuit in *United States v. McAnderson,* 914 F.2d 934 (7th Cir.1990). *See Andrews I,* at 1185 n. 33. For this conviction, Knox, who is thirty-nine years old, could serve up to fifty-four years in the federal prison system. Based on his criminal history, it is highly probable that he will serve most of these years. In the unlikely event he is released from prison before he dies, Knox will surely be a very old and harmless man. Should the government nevertheless decide to try Knox, this trial will take place after all the

**10.** Under this plan, L. Crowder will not be charged with substantive RICO, as alleged in Count Two. The government has agreed to dismiss this charge.

**11.** Of course, as to both conspiracy trials, the government will be permitted to present evidence of narcotics trafficking that involves sufficient quantities of controlled substances to secure the highest penalties under § 846, even if none of the defendants at the respective trial were actively involved in such trafficking.

other defendants have been tried and the government will be required to elect two or three of the numerous discreet charged narcotics offenses on which to proceed.

### G. Additional Trials

Defendants Roger Bowman, Floyd Davis, Eddie Franklin, Bernard Green, Melvin Mayes, Walter Pollard, and Edward Williams are presently fugitives and, in all likelihood, will not be apprehended in time to be included at one of the five trials in this severance plan. However, in the event any of these defendants is apprehended in time, we will then decide where to place them in the plan. If any or all of them are not apprehended in time, and additional trials are required, the government should plan to proceed with these trials in accordance with the stated goals of *Andrews I* and this opinion. It should select charges that allow the trials to be as expeditious as possible.

### H. Other Violent Crimes

■ The government also suggests that it is appropriate to try in "summary fashion" every other murder charged in the indictment at each of the trials. It argues that it is "fundamentally unfair" to allow the defendants to cross-examine its witnesses, El Rukns who have pleaded guilty, about participation in these crimes without allowing the government to show each of the defendant's involvement in the same crimes. However, allowing the government to present evidence of every charged murder at every trial, without a compelling

reason to do so, may largely defeat the Court's primary reasons for granting severance. Therefore, the defendants will be required to represent whether these "other murders" will be the subject of cross-examination. If they will not be going into these murders on cross-examination, the government will be precluded from bringing them up on direct examination. If the defendants represent that the murders will be the subject of cross-examination, the government will be allowed to prove in "summary fashion" each charged murder upon which its witnesses are to be cross-examined.

### I. Trial Sequence

Trial One [12] is rescheduled to commence on April 15, 1991.[13] The other trials will be scheduled as soon as possible, but, in any event, will not commence prior to April 15, 1991. This rescheduling will give the government and the defendants the opportunity to prepare for the severed trial format and for the government to continue to expand its trial team as it represented it would do at the November 20, 1990 status hearing. This extra time for trial preparation is especially necessary for the attorneys who may soon be substituted into this case as requested in pending motions.

### J. Pretrial Detention Hearings

Magistrate Rosemond is ordered to conduct hearings to reconsider the pretrial detention orders of all the defendants who are being held solely because of the indictment in this case.[14] In considering this

---

12. A scheduling order detailing procedures to be followed in Trial One will be entered in due course.

13. The Court is aware that this trial date is the same as that scheduled for the commencement of the trial in *United States v. Anderson,* No. 89 CR 909 before Judge James F. Holderman. However, based on the government's representation that it is expanding its El Rukn trial team, we assume that the scheduled date for Trial One will not pose a problem for the government. If this assumption is incorrect, the government should advise the Court forthwith.

14. According to the government, defendants Carter, Cooksey, Craig, Doyle, Houston, A. Knox, and Robinson, due to either prior convic-

tions or pending charges in other courts, are not being detained solely as result of this indictment. Consequently, it will not be necessary to reconsider their detention orders. The government also informs this Court that it will continue to "strongly oppose" the pretrial release of any of the other defendants under any conditions. It states that "the primary, if not sole, reason [it] indicted sixty-five El Rukn gang members at the same time was because of the gang's lengthy and extensive history of murdering and intimidating witnesses to their criminal activities." While we understand this made it necessary to indict all of the defendants at the same time, it does not explain the decision to indict so many of them in one indictment. That decision unfortunately has caused a very

matter, the Magistrate should place special emphasis on those defendants in Trials Two through Four whose trials have not as yet been given a commencement date.

### III. Conclusion

For the foregoing reasons, the Court confirms its November 6, 1990 order granting severance, but revises the severance plan in the manner outlined in this opinion. It is so ordered.

### APPENDIX A

#### Trial One

Defendants—Boyd, Cooksey, Craig, C. Green, S. Knox, F. Mayes, Robinson

Counts—1, 2, 4–16, 170, 175

Count Two Predicate Acts—1–4, 19–30

#### Trial Two

Defendants—Andrews, Carter, Doyle, Houston, Porter

Counts—1, 2, 3, 15, 17

Count Two Predicate Acts—5, 6, 9, 10, 13–18, 28(b), 31–34

#### Trial Three

Defendants—Bates, J. Crowder, Hoover, Lewis

Counts—1, 2, 3, 24, 26, 48, 60, 65, 67, 86, 146, 149

Count Two Predicate Acts—31, 41, 43, 66, 78, 83, 85, 99, 116, 118

#### Trial Four

Defendants—L. Crowder, Kitchen, Sardin, Speights, Tillman

Counts—1, 2, 3, 20–23, 25, 30, 159, 160–168, 174

Count Two Predicate Acts—31, 37, 38, 39, 40, 42, 45, 47, 49, 125, 126, 127

#### Trial Five

Defendant—A. Knox

lengthy pretrial detention for these defendants and, consequently, offers defendants new grounds to argue for exactly what the government was trying to avoid, their pretrial freedom.

#### Additional Trials

Defendants—Bowman, Davis, Franklin, B. Green, M. Mayes, Pollard, E. Williams

Counts—To be determined after apprehension of the particular fugitive defendant

In any event, it is clear that a review of the pretrial detention orders is appropriate at this time. *See United States v. Robinson,* NL. 90–1062, slip op. at 2 (7th Cir. Feb. 23, 1990).