**UNITED STATES of America, Plaintiff,**

v.

**Henry ANDREWS, Thomas Bates, Roger Bowman, Jeff Boyd, George Carter, Jackie Clay, Edgar Cooksey, Andrew Craig, Jerome Crowder, Lawrence Crowder, Floyd Davis, William Doyle, Harry Evans, Eddie Franklin, Bernard Green, Charles Green, Henry Leon Harris, Earl Hawkins, Louis Hoover, J.L. Houston, Eugene Hunter, Derrick Kees, Isiah Kitchen, Alan Knox, Sammy Knox, Roland Lewis, Felix Mayes, Melvin Mayes, Walter Pollard, Derrick Porter, Noah Robinson, Michael Sardin, James Speights, Anthony Sumner, Freddie Elwood Sweeney, Melvin Tillman, Edward Williams and Ricky Dean Williams, Defendants.**

**No. 89 CR 0908.**

United States District Court,
N.D. Illinois, E.D.

April 24, 1991.

William Hogan, Ted Poulos, Ross Silverman, John Hartman, Asst. U.S. Attys., Chicago, Ill., for the U.S.

Gary Ravitz, Chicago, Ill., for Henry Andrews.

Robert Clarke, Chicago, Ill., for Thomas Bates.

Kenneth Hanson, Chicago, Ill., for Jeff Boyd.

Peter Schmiedel, Chicago, Ill., for George Carter.

Victor Pilolla, Oak Park, Ill., for Edgar Cooksey.

Eugene O'Malley, Chicago, Ill., for Andrew Craig.

Carl Clavelli, Chicago, Ill., for Jerome Crowder.

Standish Willis, Chicago, Ill., for Lawrence Crowder.

Marianne Jackson, Chicago, Ill., for William Doyle.

Joshua Sachs, Chicago, Ill., for Charles Green.

Donald Paull, Chicago, Ill., for Louis Hoover.

Chris Averkiou, Chicago, Ill., for J.L. Houston.

Robert Raab, Chicago, Ill., for Isiah Kitchen.

Marc Kadish, Chicago, Ill., for Alan Knox.

Michael Falconer, Chicago, Ill., for Sammy Knox.

Keith Spielfogel, Chicago, Ill., for Roland Lewis.

Ron Clark, Chicago, Ill., for Felix Mayes.

Marty Agran, Chicago, Ill., for Derrick Porter.

Robert F. Simone, Philadelphia, Pa., for Noah Robinson.

James Graham, Chicago, Ill., for Michael Sardin.

Ron Bredemann, Park Ridge, Ill., for James Speights.

Rick Jalovec, Chicago, Ill., for Freddie Elwood Sweeney.

June Fournier, Long Grove, Ill., for Melvin Tillman.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Unfortunately, we apparently were overly optimistic when we asserted our belief in our order of January 23, 1991 ("*Andrews IV*") that "the severance chapter of these proceedings is now closed." *United States v. Andrews*, 764 F.Supp. 1248, 1251 (N.D. Ill.1991).[1] Now before us, however, is the "Government's Motion to Introduce Evidence Regarding Each Racketeering Act Charged in the Indictment." What is remarkable about the government's most recent foray is that, in essence, the government is asking us to reconsider the ruling in *Andrews III* that granted the government's motion to reconsider! This is yet another attempt by the government, in the wake of its convoluted indictment in this case, to further frustrate the efforts of this Court to formulate a workable trial format sensitive to the rights and obligations of all concerned.

The government brings its motion under Rule 12(e) of the Federal Rules of Criminal Procedure ("Rule 12(e)"): "A motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue ..., but no such determination shall be deferred if a party's right to appeal is adversely affected." The government seeks a definite pretrial ruling as to whether it will be permitted to prosecute and introduce evidence of each of the "non-specific" racketeering acts charged in Count II of the indictment.[2] The government requests such a ruling "sufficiently in advance of Trial One to allow the government to appeal an adverse ruling." Gov. Mot. at 1.

While we have accommodated the government's request for a prompt ruling, we find the request interesting in light of the tardiness of the motion itself. The

---

1. We have issued four orders central to the issue of severance and the related evidentiary considerations that severance entailed. We have designated them, in order of issuance, as follows: November 6, 1990—*Andrews I,* 754 F.Supp. 1161; December 4, 1990—*Andrews II,* 754 F.Supp. 1197; December 28, 1990—*Andrews III,* 754 F.Supp. 1206; and January 23, 1991—*Andrews IV* (citation not yet available).

2. The non-specific acts are the racketeering acts charged in Count I in which the Trial One defendants are not specifically named.

motion purports to be a response to the colloquy at the April 15, 1991 status hearing at which, according to the government, "[t]his court indicated that it would rule on the admissibility of [evidence of non-specific acts] after the jury has been empaneled, jeopardy attached, and the trial begun." *Id.* The government, however, has been fully aware of the court's position since December 28, 1990, when we issued our opinion in *Andrews III.* There, we vacated our decision in *Andrews II,* to exclude any evidence of non-specific acts under Federal Rule of Evidence 403 ("Rule 403"). We vacated that particular ruling primarily because of the government's representation in its motion for reconsideration that it could not prove the RICO conspiracy without the additional evidence of the non-specific acts. *Andrews III,* 754 F.Supp. at 1210 ("In light of the government's vehement objections at this relatively early stage of the proceedings ... we shall give it the benefit of the doubt and reconsider the scope of our evidentiary limitation."). We made clear in that opinion, however, that our ruling was by no means tantamount to a ruling that the evidence would be admitted at trial by expressly stating: "We shall revisit these evidentiary issues at the time of trial, when we are afforded the opportunity to consider the evidence in its most pertinent context." *Id.*

We see nothing ambiguous or unclear about our reasons for and express reservation of the Rule 403 evidentiary issues as matters properly reserved for determination at trial. Apparently neither did the government, since its subsequent motion for clarification of *Andrews III* raised no objection to that form of disposition. After considering the government's motion for clarification, we again affirmed that the Rule 403 determinations would be reserved until the time of trial. *Andrews IV,* slip op. at 3. Having found good cause to reserve ruling, and absent any objection from the government with respect to its desire to obtain interlocutory review, our ultimate decision was entirely consistent with Rule 12(e) and within our discretion to

make. *See United States v. Barletta,* 644 F.2d 50, 58 (1st Cir.1981).

While the government is certainly entitled to raise Rule 12(e) in bringing a pretrial motion, as we pointed out in *Andrews III* and *Andrews IV* (perhaps to the detriment of certain defendants, *Andrews IV,* slip op. at 3 n. 3), Rule 12(f) provides that the failure to make any requests or objections "which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver." Just as a motion to suppress is mandatory under Rule 12(b)(3), the government's present "motion to admit" evidence must also be regarded as mandatory under Rule 12. *Cf. Barletta,* 644 F.2d at 55 (government's motion to admit evidence raises no broader or different issue than a defendant's motion to suppress).

The government's general concern with respect to whether it will be allowed to prosecute and adduce evidence as to each and every charged predicate act is not new. That was the subject of its motion for reconsideration of *Andrews III.* The time for dealing with these matters ended after our decision in *Andrews III.* At the latest, it ended with our disposition in *Andrews IV* of the government's motion for clarification which, as we have already pointed out, raised no objection to our reservation of ruling on the number of predicate acts and the amount of evidence that the government would be allowed to introduce. Thus, insofar as the government's present motion under Rule 12(e) turns on the impact that our reservation of ruling may have on the government's opportunity to secure an interlocutory appeal, that is a matter that should have been raised long ago.[3]

Notwithstanding the fact that three months have passed since our decision in *Andrews III,* and that the trial begins in less than two weeks, the government has

---

**3.** Even were we to regard the government's motion as an original matter, its time for raising

such a motion has long since passed under our pretrial schedule.

made no express effort to show good cause under Rule 12(f) that might excuse its waiver. The government makes only one claim that might conceivably be construed as an excuse. According to the government, our April 15, 1991 directive that the government refrain from commenting in its opening statement about the evidence on which we have reserved ruling, coupled with our warning that remarks beyond that scope would be made at the government's peril, "plainly indicated that there is a strong likelihood that this Court may exercise its Rule 403 discretion to entirely preclude evidence of the 'non-specific' predicates which make up part of the pattern after jeopardy has attached and we have lost our right to appeal under 18 U.S.C. § 3731." [4] That potential, however, was evident well prior to the time of the April 15, 1991 status. In *Andrews III* we plainly indicated our reluctance to vacate the evidentiary rulings we had made, yet having vacated the rulings, we advised the government that it "will have to present persuasive justification for admitting the morass of evidence we are otherwise inclined to exclude." *Andrews III*, 754 F.Supp. 1211. In *Andrews IV* we again admonished the government regarding "the considerations that will ultimately dictate the Rule 403 rulings we have reserved for the time of trial." *Andrews IV*, slip op. at 3.

The government, however, implies being caught by surprise by our comments on April 15, 1991, based on a revisionist interpretation of the scope of our rulings in *Andrews III* and *Andrews IV*. We find that intimation plainly lacking. The government reads our decisions as allowing it "to present evidence on each predicate act charged as part of the pattern in Count Two, subject to Rule 403 restrictions on the quantum of evidence necessary for us to meet our burden of proof." Gov. Mot. at 5. The variant between our rulings and the government's recent interpretation is a subtle one. The government separates the question whether it may place each racketeering act before the jury from the question as to how much proof it may adduce as to each act. We certainly understand the distinction, and see how it relates to the government's "legal" argument which we discuss below, but by no means may our prior opinions be read to create the impression that the government now claims. We have consistently stated in *Andrews I* through *Andrews IV* that Rule 403 considerations might warrant complete exclusion of certain non-specific acts to streamline the initial trials, in addition to any limitation on the amount of evidence needed to establish the racketeering acts that the government would be allowed to place before the jury. By the time we entered *Andrews III*, the government had absolutely no reason to believe that the Rule 403 determinations that we reserved for trial might not include the possibility that evidence of certain nonspecific acts would ultimately be entirely excluded from the jury's consideration at the initial trials of the defendants.[5] Indeed, the government surely understood that fact, since its motion for

---

**4.** The government further intimates something sinister to our use of the phrase "at your peril." As we explained at the April 15, 1991 status, if the government chooses to comment on evidence that had not yet been ruled upon, despite our express restriction of such commentary, and the evidence was subsequently ruled inadmissible, the government could expect a suitable correcting instruction to be given to the jury. There is nothing unusual, let alone sinister, either about limiting the scope of a party's opening statement to exclude evidentiary matters not yet ruled upon, or about so instructing the jury.

With respect to our limitation of its remarks in opening statement and its ability to convict the defendants of the Count I conspiracy, the government also suggests a cause and effect relation that simply does not exist. According to the government, the limitation "potentially preclude[s] our ability to convict the defendants on the racketeering conspiracy charges in Count I by having to wait until jeopardy attached to learn whether we would be allowed to present evidence of the entire pattern the defendants are charged with having conspired to commit." *See* Gov. Mot. at 2. It is hard to see how our limitation on what the government could say in its opening statement could conceivably hinder the government's ability to convict the defendants on the racketeering conspiracy charges in Count I.

**5.** In such an instance, our opinions made quite clear that any acts excluded would be held in abeyance for a later proceeding, should the government find it necessary to so proceed.

clarification of *Andrews III* specifically sought a definite pretrial ruling only as to whether it would be allowed to place Racketeering Act 31 before the jury.[6] Any lingering doubts or confusion on the part of the government as to both. our meaning and possible intent were surely obviated in *Andrews IV,* in which we stated that

> strictly as an evidentiary matter *it is not necessary to compound the number of predicate acts placed before the jury.* A "predicate act" ... is simply evidence of the element "pattern of racketeering activity." Since a substantive RICO violation does not require proof of any more than two acts in establishing a "pattern of racketeering activity," *the inclusion of additional racketeering acts becomes less important and less probative as the number of charged acts increase.*

*Andrews IV,* slip op. at 2 n. 4 (emphasis added).[7] Thus, we are unable to find cause under Rule 12(f) sufficient to excuse the government's failure to object at the appropriate time to our decision to reserve ruling on the evidentiary questions.

■ We further point out that in addition to failing to raise a timely objection under Rule 12(e) based on how our disposition of this matter may have affected its right to seek an appeal, the government has specifically waived the right to advance the "legal" argument it now raises. The government in its instant motion again challenges our authority under the Fifth Amendment to ever preclude it in any manner from trying every racketeering act charged in the indictment at one proceeding. This challenge is not new. The government previously raised this issue in the motion to reconsider *Andrews II.*

There, the government based its Fifth Amendment claim on the contention that the preclusion and holding in abeyance of non-specific acts amounted to an impermissible amendment or modification of the indictment, therefore placing the defendants at risk of double jeopardy. We rejected the government's challenge based on its lack of standing to advance the Fifth Amendment rights that only the defendants should be permitted to invoke. *Andrews III,* 754 F.Supp. at 1208–10. We further pointed out that "the government has offered no other grounds or theory that would otherwise justify its intervention based on the Fifth Amendment." *Id.* at 1210. Thus, unlike the evidentiary issue, which was reserved for trial, we specifically ruled against the government on the matter of our legal authority to preclude and hold in abeyance the presentation of non-specific acts. That decision constituted a final and binding determination which the government elected not to appeal.

All that the government is attempting to do now with its motion to admit evidence is articulate a new legal theory and cite case law that it failed to raise in support of its earlier motion. The government's present motion advances for the first time grounds for bringing a challenge on its own behalf based on the theory that we have impermissibly dismissed (as opposed to modified or amended) the indictment. *See United States v. Levasseur,* 846 F.2d 786, 787–90 (1st Cir.1988). The government relies on this new theory as grounds for asserting that it clearly would have had the right to appeal our orders under 18 U.S.C. § 3731 had we not reconsidered our exclusionary

---

**6.** That decision was one we were able to make pretrial, since we had already decided that a certain amount of evidence of drug activity must be permitted, and since one of the defendants specifically requested that Racketeering Act 31 not be held in abeyance and instead to be tried in the first trial.

**7.** This comment simply echoed earlier statements in *Andrews I* and *Andrews II* in which we expressly detailed our doubts as to the probative need for proving every racketeering act that each defendant may have committed or agreed to in establishing a RICO violation in the initial

trial of each defendant. *See Andrews I,* 754 F.Supp. at 1183–84 (observing that since RICO does not require proof of any more than two acts in establishing a "pattern of racketeering," at some point the value of evidence of additional and numerous racketeering acts becomes increasingly less important and probative); *Andrews II,* 754 F.Supp. at 1205 ("allowing the government to present evidence of every charged murder at every trial, without a compelling reason to do so, may largely defeat the Court's primary reasons for granting severance").

rulings and definitively precluded evidence of two or more charged predicate acts against the respective defendants. Yet, even assuming that its present argument has merit,[8] we must reiterate that it was at the government's urging that we decided to reconsider our preclusion of the non-specific acts. If the government was so concerned about the opportunity for an interlocutory appeal on either the legal or evidentiary ramifications of our decision, then at the time of *Andrews III* it should have sought the kind of definite pretrial determination that it claims is necessary for such review.[9]

As things now stand, and based on the government's earlier vehement objections, we remain undecided as to whether all, some or none of the myriad non-specific acts should be precluded. Depending on the government's showing at trial, it may well be that the preclusion of certain non-specific acts will not be necessary. That being the case, even if the government was not barred from bringing its present motion, we are not really in a position to decide the legal issue that the government now raises, since the issue arises only upon a final decision to preclude racketeering acts—a decision we have yet to make.[10] Obviously aware of the fact that the predicate for its current claim was rendered unripe when we decided to reserve any ruling on whether the government would be precluded from initially trying non-specific acts, the government essentially wants us to reinstitute a ruling that it asked us to vacate, so that we may consider new grounds as to whether we had authority to enter the vacated order in the first place. Absent "good cause" for the government's failure to raise this argument at the clearly appropriate time, we have no desire to engage in such legerdemain. Nothing about Rule 12(e) suggests that the government should be permitted repeated opportunities to have pretrial matters decided in derogation of Rule 12(f),[11] particularly when, as is the case here, the repeated effort

---

**8.** Had the government timely raised its new contention, the merits of the government's purported "absolute" right to appeal the matter are doubtful. First, the government has cited no binding authority from the Seventh Circuit that would deem as a dismissal a decision to hold certain racketeering acts alleged as part of a RICO conspiracy in abeyance. Second, we do not believe that the case that the government now cites is applicable to the unique circumstances of our severed proceeding. In *United States v. Levasseur*, 846 F.2d 786 (1st Cir.1988), the First Circuit found jurisdiction for an interlocutory appeal based on the fact that the trial court had struck five of the predicate acts charged against each defendant, and by doing so had therefore eliminated a distinct basis upon which the government could have secured a conviction. In our case however, holding the charged predicate acts in abeyance as we have, without relevant objection from any of the defendants, does not amount to the impermissible dismissal that the government claims, since the government will have the opportunity to try the defendants for any combination of predicates that might be excluded. *Andrews III*, 754 F.Supp. at 1209.

**9.** In connection with this circumstance, though we understand the government's desire to make a record for any possible appeal, it is indeed unfortunate that the government has found it necessary to slant our motives for vacating our rulings in *Andrews I* and *Andrews II*. The government cites out of context part of our comments at the December 12, 1990 hearing on the government's motion to reconsider, which we made in response to the government raising the "threat" of an interlocutory appeal as one means of persuading us to vacate our Rule 403 exclusions: "[M]aybe I should reconsider [the Rule 403 rulings] and wait until after the jury is selected and make evidentiary determinations in the traditional way the judges do it to avoid this kind of thing." The passage selected by the government gives the impression that we reserved ruling solely in order to avoid an interlocutory appeal. That is hardly the case. The remainder of our comment, which the government did not quote, was: "I thought making the rulings up front would be a help to both you and the [defense] attorneys." Indeed, it was not until the government persuaded us that our Rule 403 determinations might have been premature that we decided to vacate our prior order and reserve the evidentiary rulings until we were in a better position to assess at trial the validity of the government's concerns and strength of its case.

**10.** We must stress, however, no ruling of this Court, nor any Rule 403 determination we may make will result in the dismissal of any count.

**11.** Not incidentally, Rule 12(f) had been amended to its present form to make clear that waiver occurs after having failed to raise the issue at the time set, as opposed to simply before trial. *See* Fed.R.Crim.Proc. 12, Note of Advisory Committee on 1974 Amendments to Rules.

comes on what must be deemed "the eve of trial" and, in any event, several months after the government had ample opportunity to fully brief the matters and obtain a ruling.

■ The nature of the government's waiver in this case would appear to foreclose any basis for pursuing an appeal of this matter prior to trial. However, regardless of the bona fides of any 11th hour effort by the government to seek interlocutory review, we are obliged to point out that any delay in the start of the trial brought about by such action would be fundamentally unfair to the defendants, who have been detained in protective custody for more than one year—in part because of the government's initial insistence at prosecuting a 38-defendant megatrial—and who now are ready for trial. Although it should be obvious to all, we are obliged to express our concern that such belated action by the government may well be determinative in deciding the Speedy Trial Act and preventive detention claims which the defendants have consistently raised and are entitled to renew in the event any new development results in the further postponement of the scheduled trial date. *See United States v. Robinson,* No. 90–1062 slip op. (7th Cir. Feb. 23, 1990). Notwithstanding the merits of the government's purported right to appeal, where the exercise of that right may result in a disruptive effect on the criminal trial process, we are obliged to balance the government's right to appeal pretrial orders with the defendants' right to proceed to trial on the indictment. *United States v. Gatto,* 763 F.2d 1040, 1050 (9th Cir.1985).

### Conclusion

We deny the government's motion. We reiterate our April 15, 1991 order so that the intentions of this Court will be perfectly clear to all parties concerned. Opening statements should be restricted to evidence that will be proffered at trial. *See, e.g., United States v. Obregon,* 893 F.2d 1307 (11th Cir.1990) (in opening statements, prosecution improperly referred to testimony which it had no intention of presenting at trial). Prudence dictates that evidence which may be subject to Rule 403 attack during the course of trial should not be commented upon during opening statements. *Cf. United States v. Bailey,* 689 F.Supp. 1463, 1476 (N.D.Ill.1987) (directing government not to mention evidence in opening statement on which the court had reserved ruling as to admissibility). The Court will not mandate the government's exercise of prudence other than to reassert that the jury will appropriately be instructed to disregard any evidence that may be stricken and any portion of the opening statement not supported by the evidence. We emphasize that the Court does not at this time hold any preconceived bias—either favorable or unfavorable—regarding any particular Rule 403 questions that may become ripe during the course of trial. The attorneys will have notice and the opportunity to be heard prior to the making of such a determination. It is so ordered.