**UNITED STATES of America, Plaintiff,**

v.

**Thomas BATES, Bernard Green, Jerome Crowder, Edward Williams, Louis Hoover, and Roland Lewis, Defendants.**

**No. 89–CR–908.**

United States District Court,
N.D. Illinois, E.D.

Sept. 21, 1992.

Robert G. Clarke, Chicago, Ill., for Bates.

Jerry B. Kurz, Chicago, Ill., for Williams.

Kent R. Carlson, Chicago, Ill., for Green.

Donald Paull, Chicago, Ill., for Hoover.

Keith A. Spielfogel, Chicago, Ill., for Lewis.

Carl P. Clavelli, Chicago, Ill., for Crowder.

Theodore T. Poulos, John F. Hartmann, Asst. U.S. Attys., Chicago, Ill., for U.S.

## OPINION

RICHARD MILLS, District Judge [1]:

Where defendants are convicted of violating 18 U.S.C. § 1962(d) ("RICO Conspiracy") on the basis of unspecified predicate acts, can those defendants be held account-

1. Honorable Richard Mills, U.S. District Judge

able, for purposes of sentencing, for *all* the predicate acts charged in the indictment?

In this case, no.

## I. FACTUAL BACKGROUND

This case involved the jury trial and sentencing of six members of the El Rukns—an infamous Chicago street gang. All of the defendants held positions of leadership within the organization and were responsible for the supervision of the gang's daily activities, consisting largely of illegal drug distribution.

The trial of these six defendants—commonly referred to as "El Rukn III" in this district—consumed 28 full trial days over a span of four months. The case was tried before an *anonymous* jury—even the Court knew the jurors only by their respective numbers. All six defendants were in custody and each defendant was represented by a separate attorney appointed under the Criminal Justice Act. The evidence consisted of testimony from 31 witnesses, and days of listening to tapes of telephonic overhears and wiretaps, amassing a total of 6,544 pages of transcript—excluding sentencing.

After deliberating four days, the sequestered jury returned its verdicts. And the Court subsequently imposed the following sentences:

| | | |
|---|---|---|
| BATES | – | Life |
| GREEN | – | Life |
| CROWDER | – | Mandatory Life |
| WILLIAMS | – | Life |
| HOOVER | – | 35 years |
| LEWIS | – | 40 years |

Count I of the second superseding indictment charged all of the defendants with violating 18 U.S.C. § 1962(d) ("RICO Conspiracy"). In support of both the RICO Conspiracy charge (§ 1962(d)) alleged in Count I and the substantive RICO charge (18 U.S.C. § 1962(c)) alleged in Count II, the indictment listed 64 separate predicate acts alleging various acts of murder, conspiracy to commit murder and drug of-

for the Central District of Illinois, sitting by

fenses.[2] All of the defendants—with the exception of Defendant Hoover—were subsequently found guilty of RICO Conspiracy.

At sentencing, the Government sought to hold the defendants accountable for the acts of murder and conspiracy to commit murder listed as predicate acts in the indictment pursuant to United States Sentencing Guideline 2E1.1(a)(2). The defendants uniformly objected to the inclusion of those violent offenses for purposes of sentencing and this Court sustained that objection.

## II. ANALYSIS

18 U.S.C. § 1962(d) provides "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Specifically, Defendants were charged with conspiring to violate 18 U.S.C. § 1962(c) which states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To prove guilt with respect to RICO Conspiracy, the Government must show: (1) the existence of an enterprise; (2) that the defendant was associated with that enterprise; (3) that the defendant knowingly conspired to conduct or participate in the affairs of the enterprise directly or indirectly, through a pattern of racketeering activity; and (4) that the enterprise engaged in interstate commerce or that the enterprise's activities affected interstate commerce. *United States v. Neapolitan,* 791 F.2d 489 (7th Cir.1986), *cert. denied,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). To establish a "pattern of racketeering activity" for purposes of RICO designation.

Conspiracy, the Government must prove beyond a reasonable doubt that the defendant agreed that at least two of the predicate acts charged would be committed. *United States v. Garner,* 837 F.2d 1404 (7th Cir.1987), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988).

United States Sentencing Guideline § 2E1.1 provides:

*Unlawful Conduct Relating to Racketeer Influenced and Corrupt Organizations*

(a) Base Offense Level (Apply the greater):

(1) 19; or

(2) the offense level applicable to the underlying racketeering activity.

Application Note 1 to § 2E1.1 states "[w]here there is more than one underlying offense, treat each underlying offense as if contained in a separate count of conviction for the purposes of subsection (a)(2)."

### A. *Due Process Considerations*

The original indictment in this cause consisted of a document some 305 pages in length, which named 38 defendants in 175 counts. Originally set for trial before United States District Judge Marvin E. Aspen, the 38 defendants named in the original indictment were severed into five trial groups. *United States v. Andrews,* 754 F.Supp. 1161 (N.D.Ill.1990). In a subsequent opinion, Judge Aspen reorganized the membership of each trial group, and ordered that:

Defendants Thomas Bates, Jerome Crowder, Louis Hoover, and Ronald [sic] Lewis will be tried together at Trial Three. *Since the government has agreed to dismiss every violent racketeering act charged against these defendants, they will be tried solely for narcotics offenses,* including the § 846 conspiracy charged in Count Three and alleged as Racketeering Act 31.[3] (Emphasis added.)

---

**2.** All of the Defendants were charged in Count I while only Defendants Bates, Crowder, Green and Lewis were charged in Count II.

**3.** Defendants Green and Williams were fugitives at the time of Judge Aspen's order but were subsequently apprehended and tried with the aforementioned Defendants.

*United States v. Andrews,* 754 F.Supp. 1197, 1203 (N.D.Ill.1990).

On September 30, 1991, in response to defendants' joint objection to the anticipated introduction of violent crimes evidenced by the Government and in light of the orders on severance, this Court entered an order limiting the introduction of such evidence at trial.

■ Yet, at sentencing, the Government argued that "because the murders were included in Count One and the jury based its verdict on them, they must be considered as part of the conduct proven against the defendants in the racketeering conspiracy and therefore must be taken into account for sentencing purposes under the Guidelines." The Government maintained their position despite admitting that "[t]hese same murders and acts of violence, however, were not specifically charged against these defendants as part of their individual 'patterns of racketeering activity' in Count Two (Substantive Racketeering), *which consisted entirely of narcotics based activity."* (Emphasis added.)

"The right to due process requires adequate notice and a meaningful *opportunity* to be heard." *Wienco, Inc. v. Katahn Associates, Inc.,* 965 F.2d 565, 568 (7th Cir.1992) (emphasis in original). "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972), *quoting Baldwin v. Hale,* 1 Wall. 223, 233, 17 L.Ed. 531.

Here, to hold the defendants responsible for the violent crimes alleged as predicate acts in Count I—murder and conspiracy to commit murder—would offend due process. Both the prior rulings of this Court and the representations of the Government made clear that these defendants were to be tried on the basis of their involvement in illegal narcotics activity. Accordingly, evidence not related to that narcotics activity was presented at trial in an abbreviated fashion, if at all. Limitations on the introduction of such evidence undoubtedly influenced both the tactics and strategy of the defendants at trial and to now hold them responsible for those acts offends basic notions of justice.

**B.** *Inconclusiveness of Jury's Verdict*

Following the close of evidence, final arguments, and the Court's instructions, the jury was given special verdict forms for those defendants charged with substantive RICO in Count II. Those verdict forms charged the appropriate defendants with the commission of specific predicate acts, from which the jury could base its verdict regarding the substantive RICO charge. But those special verdict forms failed to allege any predicate acts involving *violent crimes.* In addition, special verdict forms were not submitted to determine accountability for specific predicate acts for purposes of the RICO conspiracy charge.

### III. CONCLUSION

United States Sentencing Guideline § 1B1.2(d) provides "A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." Application Note 5 to § 1B1.2(d) states:

> Particular care must be taken in applying subsection (d) because there are cases in which the jury's verdict does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

Here, the Court is faced with the unanswerable question of *which* predicate acts the jury found the defendants accountable for. In addition, evidence regarding the defendants' involvement in violent crimes offenses was abbreviated pursuant to the Court's prior orders. Thus, it is virtually impossible to attempt to determine the defendants' accountability for acts upon

which there was such limited evidence introduced at trial.

*Ergo,* the Court sustains the defendants' objection to the inclusion of the predicate acts involving acts of murder and conspiracy to commit murder, for purposes of sentencing, pursuant to Count I.